## WILLIAMS vs. MICHIGAN CENTRAL RAILROAD COMPANY.

The Michigan Central Railroad Company is the legal owner of its road, by purchase and grant from the State; and has by the express terms of its act of incorporation, (*Session Laws of 1846, p.* 37,) the entire and exclusive right of its possession and control.

The company is not bound by its charter or the principles of common law, to fence in its road for the protection of other persons' domestic animals or for any other purpose.

The act of running cars over their road, being a lawful act, the company cannot be held liable for accidental injuries occasioned thereby; unless the running was without proper care or in an unreasonable manner.

The vote of a township, making cattle, &c., *free commoners*, cannot confer upon individuals the right to graze horses, cattle, &c., on the company's road in said township, the road being in law, neither a public common or a public highway.

The provisions of R. S., p. 84, § 4, confer upon the inhabitants of townships, the right merely of determining the time and manner in which cattle, &c., shall be restrained from going at large in the public highways. These provisions do not include railroads as highways, nor do they authorize individuals, through the powers thus vested in townships, to trespass on vested private rights.

The act of 1847, (*Sess. Laws*, 1847, *p.* 181,) providing that "no person shall recover for damages done upon lands by beasts unless in cases where, by the by-laws of the township, such

beasts are prohibited from running at large, except where such lands are enclosed by a fence," &c., does not confer any such authority or change the common law. It does not require individuals to fence their lands, but precludes recovery for damages done by beasts thereon, unless fenced.

The act last referred to is only applicable to such lands as are usually fenced, which cannot be entirely done in the case of a rail road track.

It is a well settled principle of law, that where an injury of which a plaintiff complains is the result of his own negligence or fault, or of the negligence or fault of both parties, without intentional wrong on the part of the defendant, no action can be maintained.

This is an action brought by the plaintiff against the defendants, in the Wayne County Court, to recover the value of certain horses killed by a locomotive and train of cars on the Railroad.

The cause was submitted to the Court below, on a written statement of the facts, by which it is admitted that the plaintiff resides about six miles south of the village of Wayne; that the horses in question were his property, and that they strayed from his premises and were returning to Hamtramck, the place from which they had been previously taken; that they were on the track of the Railroad near Dearbornville, just before night, on the 23d day of June, 1849, and were killed about one o'clock the next morning, on the track of the road, between Dearbornville and the River Rouge.

It is further admitted that one of the horses was killed about ninety rods east of Dearbornville; others at the first cattle guard, where a public highway crosses the Railroad, and about sixty rods west of the Rouge Bridge; and others about sixteen rods east of said highway, they having jumped over the cattle guard. That the Railroad was fenced on each side from Dearbornville to the crossing of said highway, and that the horses came upon the track from the *common* at the village of Dearbornville, where there was no cattle guard, and when on, were confined within a narrow lane, in which they were killed. That said lane was the property of the defendants, and constituted the track of the Railroad, over which their passenger and freight cars were accustomed to pass several times daily. That their passenger trains run with great speed twice each way every day, between Detroit and New Buffalo; that the horses were killed by the passenger train at the usual time of its passage over the Road; and that the morning was dark and rainy.

It is also conceded by the case that no *by-laws* restraining cattle from going at large had been passed by the township of Dearborn, and that they were free commoners.

The case thus submitted was reserved by the County Judge for the opinion of this Court.

*Backus & Harbaugh,* for plaintiff.

*James F. Joy,* for defendants.

By the Court, PRATT, J.

The main question to be determined in this cause, is, whether upon the facts admitted by the case, the defendants are liable for the value of the horses killed. By no principle of law can they be rendered liable on such a state of facts.

The defendants are the legal owners of the railroad, having acquired it by purchase, and grant from the State. Whether their charter contains powers and privileges which were improvidently granted by the Legislature, is not a question to be considered here in deciding the case; but whether under their chartered rights, and in view of the facts submitted, they are liable to the plaintiff for the loss he has sustained, resulting from their act, in running their locomotive and cars over their own railroad. Legally the defendants can be required to do no more in rendering the running of their cars safe to persons and property, than is required by the provisions of their charter, and the principles of the common law. By neither are they required to fence in their road for the protection of other person's *domestic animals,* or for any other purpose whatever.

By the charter, the defendants are required, under heavy penalties, "to keep the road open and in repair for use, from Detroit to Lake Michigan, and always have and keep in use thereon, a sufficient supply of motive power and cars, both for persons and property, for the expeditious and convenient transaction of business, and the transportation of all persons and property offering for transportation." (*Sess. Laws* 1846, *p.* 56, § 21.) Under these penal requirements, the defendants were engaged in running a passenger train of cars, at the time the injury complained of by the plaintiff occurred. The running of that train was a lawful act, and within their chartered rights; it was upon their own railroad, of which they had, by the express terms of their act

of incorporation, the entire and exclusive right of possession and control. No third person had any right to interfere, or to arrest the passage of the train, or, by any means impede its progress. The act, then, of running the cars being lawful, the defendants cannot be held liable for any accidental injury, which may have occurred, unless the lawful right of running the train was exercised without a proper degree of care and precaution, or in an unreasonable or unlawful manner. This is a principle of law well settled, neither new or anomalous. It is as old as any other principle of the common law, and alike applicable to every other kind of lawful business.

From the facts admitted by the case, it appears that the cars were running at a usual time, and that it was a dark rainy night; but it does not appear that the train was running at any greater speed than usual, or that the engineer conducting the train did not in fact exercise reasonable care and skill; nor can such an inference be legally drawn from the facts in the case. But it is insisted, on the part of the plaintiff, that in the township of Dearborn, horses were *free commoners*, and therefore rightfully on the railroad. This position cannot be sustained. In legal contemplation, the railroad is neither a *public common* nor a *public highway*. The voters of the township of Dearborn could not, by any power vested in them by the Legislature, confer upon the plaintiff the right of grazing his cattle and horses on the lands granted to the defendants, exclusively for the construction and use of their railroad. The provision of the statute relied on, confers upon the inhabitants of townships merely the right of determining the *time* and *manner* in which cattle, horses, and other animals shall be restrained from going at large in the *public highways*. (*R. S., p.* 84, § 4.) By no possible construction can this provision of the statute include railroads; nor can it be supposed that the Legislature intended to have them included as *highways*, or to authorize individuals, through the power thus vested in the townships, to trespass on vested private rights. Nor does the act of 1847, which is also referred to and relied on, confer any such authority, or change the common law rule applicable to the case under consideration. This act provides merely, "that no person shall recover for damages done upon lands by beasts, unless in cases where by the by-laws of the townships, such beasts are prohibited from running at large,

except where such lands are enclosed by a fence," &c. (*Sess. Laws of* 1847, *p.* 181.) Thus far this act goes, but no farther, and it cannot be enlarged by implication or intendment. This suit is not brought under this act by the plaintiff to recover damage done on his lands by the defendants' beasts; hence the act can have no legal bearing whatever on the case under consideration. This act does not require men to fence their lands, but merely precludes a recovery for damages done by beasts thereon, unless they are fenced. Nor does it grant any right to one individual to trespass on the private property of another, or to depasture at will *railroads* any more than other lands owned and possessed by individual citizens; nor can the Legislature, under the Constitution, confer any such right. But there is another view to be taken of this point made in the case, and which must be regarded as conclusive. In the case of the Tonawanda Railroad Company, *vs.* Munger, (5 *Denio R.*, 255,) the Supreme Court in giving a construction to the provision of their statute, of which our act of 1847 is a substantial copy, say, "that it is in its terms and spirit applicable to such lands only as are usually fenced, which cannot be done with the track of a railroad, and that no one ever supposed that such a strip of land, should be surrounded in its whole extent by a fence, or that a fence could be maintained across the track at every intersection of a highway; that it would be entirely defeating the great object for which railroads are allowed to be constructed." This is undoubtedly a correct view of the subject; and the construction given to their statute, is the only construction which can be given to our act of 1847, and protect the defendants in the enjoyment of their legal rights, and enable them to prosecute their business under their charter, without daily incurring the heavy penalties imposed upon them by the grant.

If the plaintiff, under the acts referred to, had no affirmative right to graze his horses on the track of the railroad, it follows that they were there wrongfully; inasmuch as the common law gave him no such right. By way of illustration, suppose that the plaintiff's horses had gone into another man's wheat field, through a gate which had been left open by the owner, and killed themselves eating wheat: could the plaintiff have recovered of the owner of the wheat, the value of the

horses under the provisions of the act of 1847? Clearly he could not; the horses would have been in the field without right; hence wrong-fully there. Nor could the owner of the wheat, having left his gate open, recover under that act the damage done by the horses. Wheat fields are usually enclosed by fence, and in such a case the act would apply, and legally bar a recovery. Brainard *vs.* Bush, (1 *Cow. R.*, 78,) is a case in point. Bush made maple sugar in a piece of unen-closed woodland, and left some syrup in his sugar works in an unenclosed shed, to which Brainard's cow came in the night and drank, which caused her death. Chief Justice Savage in delivering the opin-ion of the Court, says, "although the defendant was guilty of negli-gence in leaving his syrup where cattle running at large might have access to it, yet the plaintiff having no right to permit his cattle to go there, has no right of action." This decision goes no further than to carry out an elementary principle of the common law. Horses in the township of Dearborn being *free commoners* under some township rule or regulation, does not change the effect of this principle of common law, or the vested private rights of the defendants or other individual citizens. The idea that because horses and cattle are *free commoners,* they have therefore the lawful right of trespassing on private property is absurd—preposterous in the extreme. What are free com-moners? Where may they run? In Holladay *vs.* Marsh, (3 *Wend. R.*, 147,) the Supreme Court say: "Suppose a case where a town has no *common land,* and they pass a *by-law* permitting cattle and horses to run at large, where are they to run? Surely not on *individual* property. Where then?—in the highway? The public have simply a right of passage over the highway The owner of the land through which the highway passes, is the owner of the soil and the timber, except what is necessary to make bridges, or otherwise aid in making the highway passable; and if the owner of the soil owns the timber, why not the grass?" The doctrine established by this decision is in accordance with a fundamental principle of the common law, which has been recognized by elementary writers, and judicial decisions, in Eng-land and this country for a great length of time. "Though every high-way is said to be the King's, yet the King has nothing except the right of passage for himself and his people; the freehold and all the profits,

as trees, &c., belonging to the lord or owner of the soil, who may have an action of trespass for digging up the ground of the highway." (*Cunningham's Law Dictionary;* also 3 *Tomlin's Law Dictionary*, 788; 1 *Burr*, 143; 3 *Bacon*, 394.) Such has ever been the legal doctrine held in most, if not all of the States in the Union. (3 *Kent's Com.*, 433; 3 *John.*, 363; 8 *Wend.*, 107; 12 *Ib.*, 98; 20 *Ib.*, 97; 6 *Pet.*, 513; 10 *Ib.*, 25; 6 *Pick.*, 57; 6 *Mass.*, 454; 16 *Ib.*, 33; 5 *Denio*, 255; 4 *Barbour S. C. R.*, 56.) The only decision found conflicting with this principle of law, which has been so long recognized and adhered to, is in Griffin vs. Martin (7 *Barbour's S. C. R.*, 297,) a case recently decided by the Supreme Court of the State of New York, at a term held in Saratoga, by Justices Paige, Willard and Hand; Justice Willard delivering the opinion, Justice Paige concurring and Justice Hand dissenting; so that it was not the unanimous opinion of the Court, and it is to be hoped that it may be overruled by the Court of Appeals, it being neither sound in law, or just in principle.

But there is still another view to be taken, and which is equally decisive of the case. It is a well settled principle of law, that where an injury, of which a plaintiff complains, has resulted from the fault or negligence of himself, or where it has resulted from the fault or negligence of both parties, without any intentional wrong on the part of the defendant, an action cannot be maintained. (8 *John.*, 421; 1 *Cow.*, 78; 19 *Wend.*, 399, *and the cases there cited;* 21 *Ib.*, 615; 5 *Hill*, 282, *and the cases there cited in note* (a;) 6 *Ib.*, 592; 5 *Denio*, 255; 4 *Met.*, 49; 7 *Ib.*, 274.) The plaintiff resided in the vicinity of the railroad, and is not only presumed to have known the legal rights of the defendants touching their exclusive use of it, but the danger attending domestic animals that are permitted by their owner to be thereon; hence he was guilty of at least some degree of negligence, as well as a want of care and attention to the safety of his own property, in suffering his horses to stray away into a situation of extreme danger. But he was guilty of a *culpable degree of negligence* in permitting them, without care or pursuit, to stray away from his possession and be strolling *wrongfully* along on the track of the railroad, where trains of cars were almost constantly running with great speed, day and night; and where they might have been the cause of destroying not only the property, but the

lives of others, who were lawfully pursuing their legitimate business. The injury to individuals and the destruction of human life, which has from time to time occurred in this country, in consequence of *domestic animals* being wrongfully on the track of railroads, is appalling, and justly exciting much alarm in the public mind.

The defendants in running the cars, were pursuing merely their lawful and legitimate business, and were clearly within the powers and privileges granted by the express terms of their charter. If the injury complained of had occurred in consequence of any negligence or fault on the part of the defendants, or the engineer conducting the train, without any negligence or fault on the part of the plaintiff, the defendants most unquestionably would have been liable for all the damages sustained by the plaintiff; but such is not the case presented. This suit is an action on the case, sounding in tort. The wrongful injury alleged, constitutes the foundation of the plaintiff's right of action; and yet the facts submitted for the purpose of sustaining it, show not the least degree of negligence, or want of care or skill on the part of the defendants, or the engineer conducting the train; and the ground upon which the action was brought, or upon which it was expected that it could be maintained, cannot be perceived, for the case submitted neither shows a *malfeazance, a misfeazance, or a nonfeazance.*

It often happens that no precaution, care or skill can prevent a locomotive at the head of a train of cars, running with their accustomed speed, from coming in collision with some domestic animal wrongfully on the road, and which the owner has negligently suffered *to go* at large unrestrained; the engineer conducting the train not being able in consequence of some curve in the road, the darkness of the night, or some other unavoidable cause, to discover the animal in time to stop the locomotive, and thus prevent the collision. Under such circumstances, the defendants could not be held liable by any known principle of law; and if they could be, it would be unreasonable and manifestly unjust. They are required under heavy penalties, to run the cars, and expeditiously transport persons and property, &c.; and shall they, by construction based upon nothing better than mere hypothesis, be compelled to assume the guardianship of all the stray cattle, horses, and swine, usu-

ally found strolling along on the track of their railroad? Most certainly not. The owners are the only persons to look after them; and if they do not, it is but just that they alone should suffer the consequences of their own negligence and wrongful act—of their own want of care, in the protection and preservation of their own property.

The opinion of this Court is, that the plaintiff is not entitled to recover on the case submitted.

# CASES

## ARGUED AND DETERMINED

### IN

# THE SUPREME COURT

#### OF THE

## STATE OF MICHIGAN.

---

### OCTOBER TERM, 1851.

---

PRESENT:

HON. C. W. WHIPPLE, CHIEF JUSTICE.
HON. WARNER WING,  ⎫
HON. SANFORD M. GREEN, ⎬ JUSTICES.
HON. ABNER PRATT,  ⎭