GARDNER v. SMITH.

## Ransom Gardner v. William Smith.

Under the General Railroad Act, the liability of corporations organized under it, and their agents, for damages which may result from the neglect of the corporation to erect and maintain fences on the sides of the line of the road, attaches as soon as they have possession of the route for the purpose of constructing the road.

A contractor for the construction of the road, is an *agent* of the corporation within the meaning of this provision.

But as contractor, possessing and exercising the power of the corporation over the road for the purpose of its construction, and assuming its control, he assumed also the responsibilities which the law imposed upon the corporation respecting its use; and the liabilities for its improper use. He is, therefore, primarily liable to the same extent that the corporation would have been for the same acts or omissions.

Where, therefore, while a contractor was engaged in constructing a railroad through certain premises, and had taken away the fences across the line for that purpose, and sheep of the owner of the premises escaped through the opening so made, and were lost, — *Held*, that the contractor was liable to the owner for the loss.

It does not affect the liability that the owner turned the sheep into the field through which the line ran, after the route was so taken possession of, and while the contractor was constantly throwing down the fences for his purposes.

*Heard July 8th. Decided November 15th.*

Error to Wayne Circuit.

Smith brought action against Gardner, who was contractor for constructing the Detroit, Monroe & Toledo Railroad, and declared against him, for that he entered upon a certain close and premises of plaintiff, "and proceeded to grade and build the said railroad in, over, and across the same, and thereupon it became, and was, the duty of the defendant to erect and maintain lawful fences in, upon, and across said close and premises, on each side of the line and route of said railroad, and until said fences were constructed, faithfully to guard, secure, and prevent from escape the cattle, horses, and sheep of the plaintiff, there lawfully being in and upon said close and premises. Yet the said defendant, not regarding his duty in the premises, did not, nor would, erect any fence whatever upon the sides of said line or route, nor did he, nor would he, guard·

secure, and prevent from escape said cattle, horses, or sheep of the plaintiff, then and there being, but, on the contrary, the said defendant then and there carelessly, negligently, and improperly threw down the fence of plaintiff on said close and premises, and carelessly, negligently, and improperly suffered the same to remain thrown down," by means whereof certain horses, cattle and sheep of plaintiff escaped from said close and premises, and were wholly lost to said plaintiff. Defendant pleaded the general issue.

On the trial before a jury, it was admitted by the defendant that he was a contractor of the Detroit, Monroe & Toledo Railroad Company, under a contract with said company to make the grade of said road from Detroit to Toledo.

The plaintiff's testimony, among other things, tended to show that the plaintiff, in the summer of 1856, and while the defendant was at work under his contract, was in the occupation (claiming under a lease) of a lot through which said road runs, west of, and near, the city of Detroit; that the lot was a meadow, the hay from which had been cut off; but whether it had been used as a pasture during that season, before, did not appear; that the road had been, wholly or in part, graded across said lot previous to the loss of the sheep by plaintiff, as hereinafter stated, but that no fence had been built on either side of said track; that on a Sunday, in the last of July, or fore part of August, 1856, the plaintiff put seventy-three sheep into said lot; that the fences were then up; that plaintiff's servants, at that time, carefully examined the fences across the track, and all around the pasture; that on the morning of the next day the fence was taken down across the track on the side of the lot nearest Detroit, by men in the employ of the defendant, and who were then at work in a lot on that side of, and adjoining, the lot of the plaintiff, and that the sheep escaped through the gap thus made, and most of them were lost. There

was no evidence on the part of the plaintiff to show that the defendant, or his men, knew that any sheep were in said lot, or that they had escaped from it.

It was admitted by the plaintiff, on said trial, that the Detroit, Monroe & Toledo Railroad Company was a corporation, duly organized and established, under the General Railroad Law of 1855: That the defendant was rightfully in possession, for the purposes of making said grade, and that the railroad company had taken the necessary steps to have the damages for taking the land required to build a road across said lot, &c., appraised by commissioners, whose report had been duly confirmed and recorded, and the amount awarded had been paid. There was no proof that it was any part of the defendant's contract to fence the sides of the track.

The defendant then introduced, as witnesses, W. W. Johnson, defendant's foreman on the grading job of this section of the road, Stephen Livernois, foreman of the defendant's clearing gang, on the same section, and Jerry Mahany and John Tagin, laborers in the grading gang which made the grade across the plaintiff's pasture, and the lots adjoining, whose testimony went to show that they had no knowledge that plaintiff had any sheep in his pasture, and that they did not know or hear, at the time, that any sheep escaped from plaintiff's lot.

The defendant, among other things, requested the court to charge the jury,

1. That the defendant, as contractor of the railroad company, had a right to take down the fences across the track of said company, and was under no obligation to replace them.

2. That the defendant was under no obligation to build fences on the sides of said track; that being a duty imposed by statute upon the corporation; and that the neglect of the corporation to build such fences did not take away the right of the defendant to remove the fences across

the proposed road, nor place him under any obligation to replace them; and that he was therefore not liable for any damage occasioned by his neglect in leaving down a fence across the track, which he had removed while grading the road.

3. That the only persons, under the statute, liable to pay for damages occasioned by the neglect of the corporation to build fences on each side, were the corporation, or their agents; that defendant was not such agent, and therefore not liable in this action.

4. That the agents of the corporation were only liable for damages done to the cattle, horses, and other animals on the track, and therefore not liable for the escape of such animals from adjoining lots over such track, and their consequent loss; and that the defendant, even if he was such agent, would not, therefore, be liable in this action.

5. That the defendant and his agents were only bound to ordinary care in preventing the escape of cattle and other animals from lands through which he was building the road, and that it would not be neglect for which defendant would be liable, to leave down, while at work, a fence across the road in a meadow where no cattle or other animals were known to be pasturing.

6. That if the plaintiff turned his sheep into the pasture while men were at work there grading the road across it, and while they were constantly taking down and leaving down the fence, he acted at his own risk, and could not recover for the escape of said sheep, unless he proved that defendant, or his agents, knew that said sheep were there.

The court refused to charge as requested, and, among other things, charged the jury: That the Detroit, Monroe & Toledo Railroad Company had a right to enter upon the defendant's lot, for the purpose of grading their road across it, and had a right to take down the fences across said road, and to leave them down; but, until side fences

were built, were bound to prevent the escape of any
sheep or other animals from said lot, either by keeping
up the fences, or employing other means to guard against
their escape: that said company, instead of doing said
work themselves, had a right to employ the defendant to
do it for them; that he was not the agent of the com-
pany, but, within the limits of his contract, had the rights,
and was subject to the responsibilities, of said corporation;
that he was under no obligation to build fences on the
sides of the railroad track, and had a right to take down
fences across the track, but was, while in the possession
of the road for the purpose of grading it, under the like
obligation to guard against the escape of sheep and other
animals from the defendant's lot, as the corporation would
be under in the same circumstances; and that, if the plain-
tiff's sheep escaped in consequence of the fence across the
track being taken down, or left down, by the defendant's
men, while in his employ, the plaintiff was entitled to
recover the damages which resulted therefrom; and this
whether the defendant, or his agents, knew that said sheep
were in the lot or not; as the fence was taken down at
the defendant's risk, and it was his duty to *know* whether
any sheep were there or not, and to guard against their
escape.

The court further charged the jury that they must be
satisfied that the plaintiff's sheep escaped by means of
the fence being taken down by defendant, or men in his
employment, and in the course of the duty they were
employed to perform, or the plaintiff could not recover;
but that unless the sides of the track were fenced, the
defendant was not at liberty to throw open the fence of
plaintiff's pasture, where it crossed the track, and leave
it open and unguarded, to the injury of the plaintiff in
the ordinary and lawful use of his pasture; and that if
the jury were satisfied that the defendant had been guilty
of such neglect in this case, and that thereby the plain-

tiff had lost his sheep, he was liable therefor to the plaintiff in this action. To which refusal to charge as requested, and to the charge as given, the defendant excepted.

The jury, under the charge of the court, returned a verdict for the plaintiff, and defendant brought error.

*Jerome & Swift,* for plaintiff in error.

The railroad company having complied with the requirements of the statute under which it was organized, and made compensation to the persons whose property was taken for the use of the road, had a right to do whatever was necessary for the construction of such road, and was not liable for any damages occasioned by the doing of anything authorized by the statute. — *Redf. on Railw.* 156, 167; 2 *Johns.* 283; 4 *T. R.* 794; 12 *Mass.* 465; 25 *Vt.* 70; 10 *Barb.* 366, 367, 368; 4 *Comst.* 196; 1 *Wood. & M.* 401; 4 *Harr.* 389; 12 *Barb.* 616.

The appraisal of damages, and compensation to land owners by said company, included all such incidental loss, inconvenience and damages, as might reasonably be expected to result from the construction and use of the railroad, in a legal and proper manner; and all claim for damage was thereby barred. — *Redf. on Railw.* 152.

At common law, the company was under no obligation to fence the sides of its track.— 2 *Mich.* 259.

And the inference from these propositions is, that neither the company, nor their contractor, was liable for any damages occasioned by removing fences across their track for the purpose of, and while, grading and constructing their road, because side fences were not built; unless the building of such side fences was by their charter required to precede or accompany such grading and construction.

We contend that the contractor was under no obligation to do this:

*First:*—Because the statute does not require the road to be fenced before, or while, grading and constructing it, and therefore it was no part of the contractor's duty:

*Secondly:* — This is a duty imposed upon the corporation, and not upon the contractor, and the court will not construe the statute so as to make the contractor liable for the neglect of the corporation.

*Thirdly:* — The fencing the sides of the track is not made a condition precedent to grading the road, but is a duty imposed upon the company, who are made liable for any damages resulting from a neglect of it; but until such damages occur no right of action is given.

The grading the road, therefore, or doing anything necessary thereto, would not be unlawful for the company, or subject them to damages even if such fences were not built; — much less would the contractor be liable. He can not be considered as *agent* of the company. — *Redf. on Railw.* 377; 2 *Mich.* 368.

Admitting that the defendant below was guilty of neglect, we claim that if the plaintiff's own negligence *also* contributed to his loss, or it might with proper care on his part have been avoided, he can not recover. — 11 *East*, 60; 2 *Pick.* 621; 5 *Barb.* 337; 4 *Comst.* 349; 24 *Vt.* 487; 14 *Barb.* 364; 4 *Zab.* 268; 8 *C. & P.* 373; 3 *M. & W.* 244; 10 *M. & W.* 546; 22 *Barb.* 574; 16 *N. Y.* 376.

*H. H. Emmons,* on same side.

*G. V. N. Lothrop,* for defendant in error:

The obligation to fence being imposed by statute, a liability for damages arising from a neglect to do so follows. — 18 *Barb.* 356; 19 *Barb.* 364; 39 *Me.* 273; 16 *Ill.* 522; 28 *Vt.* 103; 1 *Law Rep.* 288; 2 *Eng. L & Eq.* 289; 3 *Kern.* 42.

The fencing required by the statute is intended for all the purposes for which fencing is generally designed. If the adjacent land is occupied, the fence is designed to prevent the passage of cattle from that side on to the land, or from it. In brief, the fence is designed for all

the purposes of mutual protection along that line. — 10 *Law Rep.* 288; *Holden v. Rutland and B. R. R. Co. Law Rep. Nov.* 1858, *p.* 409. If this be so, then the liability of the company must begin as soon as they enter upon and take possession of their line, and open it so as to expose cattle to escape.

But plaintiff in error insists that even if the statute imposes a liability on the corporation and its agents, he is not liable. But as contractor he was in possession of the line of the road, and the company is not liable for his acts or neglects unless he was employed to do or neglect the very thing complained of. The maxim *respondeat superior* does not apply. — 2 *Mich.* 368; *Ibid.* 528; 28 *Vt.* 107; 4 *Exch.* 244; 32 *E. L. & Eq.* 366; 2 *Metc* 356; 3 *Gray*, 349; 1 *Seld.* 48; 4 *Seld.* 222; 1 *Kern.* 435; 4 *Duer*, 424; 4 *O. S. R.* 413; 29 *Vt.* 425. But defendant's liability may be rested upon another ground. He is clearly an *agent* of the company, within the meaning of the statute. — 28 *Vt.* 303.

No question of sufficient or insufficient care can arise here. If the statutory requirement is neglected, they must, at their peril, see that any other protection or guard is perfect. — 8 *Barb.* 358; 3 *Kern.* 48; 2 *E. L. & Eq.* 294. And no question as to the negligence of defendant in error in the ordinary use of his land. — 10 *Fost.* 188.

The appraisal of damages, on acquiring the land, did not cover the losses which might occur to the owner while the road was in course of construction. — 18 *Barb.* 350; 28 *Vt.* 106; 6 *Railw. Cas.* 197.

MARTIN Ch. J.:

The General Railroad Act, (*Comp. L.* § 1987) requires every corporation formed under it to "erect and maintain fences on the sides of their road, of the height and strength of a division fence required by law," and provides that "until such fences shall be duly made, the

corporation and their agents shall be liable for all dama-
ges which shall be done by their agents or engines to
cattle, horses or other animals thereon, *and all other
damages which may result from the neglect of said cor-
poration to erect and maintain fences as aforesaid,* and
after such fences shall be erected and maintained, the
corporation shall not be liable for any such damage, un-
less negligently or wilfully done."

At the common law one owning land adjoining a pub-
lic highway was under no obligation to erect and main-
tain exterior fences, nor was the public, or a company
occupying such highway (as for example, a turnpike com-
pany), bound to construct fences along its sides. Hence
if the cattle of the adjoining land owner strayed upon a
highway, and were injured by one traveling upon it, the
owner was without remedy, unless the injury was occa-
sioned by wantonness or negligence. As respects private
lands, the owner was liable for all damages committed by
his cattle in trespassing upon those of another, nor could
he recover damages for injuries to them while thus tres-
passing, unless wantonly and mischievously committed. The
track of a railroad is the property of the corporation, and
accordingly in *Williams v. The Mich. Central R. R. Co.*
(2 *Mich.* 259) the same doctrines were held applicable to such
roads; and the company, in that case, were held not to
be liable for the destruction, by their engine, of cattle tres-
passing upon their road, as the company were upon their
own lands, in pursuit of their lawful calling, and exercising
due care in that pursuit. The owner was held to be in
fault for allowing his cattle to stray from his lands, and
was hence remediless.

Subsequent to this decision, the General Railroad Act,
above referred to, was passed, and this introduced a new
rule, and effected a radical change in the law so far as the
rights, duties and liabilities of such companies are concerned.

These roads, although declared public, are in no sense highways. They are in reality, and from necessity must be, private in their use; and the nature and character of such use requires that they should be securely enclosed, for the protection of persons and property transported along them, and also for the protection of the property of residents in their vicinity. The duty of enclosing them is very properly imposed upon the railroad company, and the privileges and franchises they enjoy are a consideration for it. As the road is the private property of the company, and the public has no rights upon and along it at all analogous to those enjoyed upon a common road or highway, and as its exclusive use must be in the company, it is but just and reasonable that the whole burthen of enclosing and securing the road should be cast upon them, and that they should be subject to liability for all losses or injuries, however occurring, resulting from a neglect to fence it. Hence the act imposes upon such company the general duty of erecting and maintaining fences along the sides of their road, and makes them absolutely and unconditionally liable for all injuries, however occasioned, which may result from their neglect of this duty; while for injuries occurring while sufficient fences exist, they are only made liable in case of wilfulness or negligence.

In the case before us, the propriety of the law is not questioned by the plaintiff in error, and its necessity upon grounds of public security is admitted; but it is claimed that this duty is not imposed until the road is operated. This view is based upon the idea that the public security was the paramount consideration influencing the Legislature in making the law. But the statute having imposed this as a general duty, it was obligatory upon the company, as soon as they took possession of the road, and entered along its line for the purpose of constructing it. It is construing the statute too narrowly, to hold that the duty and liability of the company only commenced with the operating of the

road, or that private rights and interests were not within the consideration of the Legislature in enacting it. The road became the property of the company from the time of the condemnation of the land, and the payment of the damages assessed therefor; or from that of the acquisition of title by them by purchase; and they had thereafter a right to enter upon it for its construction. But if in so entering, they threw down the fences of an enclosure, it became their duty to erect side fences for the security and protection of the adjoining proprietor through whose land the road ran, or to take other precautionary steps to secure him from loss or injury. They have no right to insist that during the time occupied in the construction of the road, and until it is operated, the adjacent owner, whose fences have been prostrated, is bound to erect and maintain temporary fences along its line, or to set a guard, or employ any other means to prevent loss or injury to his property, or else to be deprived of the use of his lands thrown open by them. He is entitled to their use for the purpose of cultivation, or depasturing, at all times, up to the line of the road. This right was not embraced in the condemnation of his lands, and the assessment of damages, if the land was condemned; nor necessarily in its sale, if procured without condemnation; and when they entered his enclosure the company were bound to respect it.

They could not presume, nor had they a right to require, that he would abandon the use of his lands thus thrown open; or to insist that he should use them at his own risk.

The neglect of the company, in the case before us, to erect fences renders them liable, therefore, for all damages resulting therefrom; and the fact that they were constantly throwing down and leaving down his fences did not put the defendant in error in the wrong in turning his sheep into the enclosure. The first wrong being theirs, the statute makes them liable for all the consequences which ensue.—

GARDNER v. SMITH.

See Smith v. The Eastern Railroad, 35 N. H. 356; Hurd v. R. & B. R. R. 25 Vt. 116.

But while such is the duty and liability of the company, it is insisted that the plaintiff in error, being a contractor with the company for grading the track, was not bound to construct fences along its line, and consequently can not be made liable for the loss of the defendant's sheep. But the statute renders liable "the corporation and their *agents*" for all damages resulting from the neglect to erect and maintain fences. Under its provisions, an agent who, while in the employment of the company, commits or occasions any damage to the person or property of another, is liable for the injury, although it may be clearly shown to have occurred by reason of the neglect of the company to fence their road, and not through his own wantonness or negligence; and although an action would also lie against the company. And we think Gardner was an agent within the letter and spirit of the act. It was evidently intended to embrace, under the denomination of agent, every one in the employment of the company. The word is to be taken in an enlarged sense, to include those who exercise the power of the company upon or over the road, as well as those acting as engineers, or in any other subordinate capacity, and who may be active in, or connected with the commission of the injury. Thus in *Clement v. Canfield* (28 Vt. 303) a lessee of a railroad, in possession, was held to be an agent within the meaning of a like statute, and in *The Chicago, St. Paul and Fond du Lac R. R. v. McCarthy*, (20 Ill. R. 385) a *contractor* was held to be an agent under the statute of Illinois.

But not only was Gardner liable as an agent under the statute, but he was also primarily liable as a contractor posessing and exercising the power of the company over the road for the purpose of its construction.

By assuming the control of this section of the road, he assumed the responsibilities which the law imposed upon

the company respecting its use, and the liabilities which the law imposed for its improper use. In letting down Smith's fence, he rendered himself liable for the consequences, to the same extent that the company would have been, had the act been done by their servants and laborers; for he, as contractor, has no greater rights, nor other exemptions from liability for his wrongful acts, than the company would have. Without taking the proper precautions, either by erecting temporary fences, or otherwise, he was, as to Smith, a *tort feasor*, not to the extent of liability for damages in entering upon the line of the road, it is true, but to that of liability for damages directly attributable to the neglect of those precautions.

As a contractor, in undertaking to do the work, he undertook to do it in a lawful manner, and it was his duty thus to execute it. While he was not bound to erect and maintain a permanent fence along the sides of the road he was constructing, he was responsible for all damages sustained by Smith, from loss or injury to his sheep, or other property, to the same extent that the company are made liable by the statute. His power could not exceed theirs, and his liability was co-extensive with theirs. Although the company might, under the statute, have been made liable for the loss, he was also, both by the statute, and the common law.—See *Moore & Sanborne*, 2 *Mich.* 528; *Sprague v. Smith*, 29 *Vt.* 425.

Nor should any considerations of inconvenience or expense excuse the company, or the contractor, from this duty and liability. As between the corporation and Smith there is no inconvenience or expense which the former ought not more justly and equitably to bear than the latter. No appraisal of the probable loss of, or injury to, the cattle or other personal property of Smith, or of the expense of the construction of temporary fences, or the provision of other safe guards for their protection, was, or could be, made by a jury upon the condemnation of his lands; and in case of

a voluntary alienation by him, the requirements of the statute will not be presumed to have been waived. The contractor being in possession of the road, and possessing the rights and exercising the powers [of the company for the purposes of its construction, stood in their place, and was subject to the same liabilities which would have attached to them had they prosecuted the work directly by their servants and laborers; and he could have, and must be presumed to have, provided in his contract for the necessary precautionary measures required for the safe prosecution of his work.

The judgment [of the circuit court must be affirmed.

The other Justices concurred.