LAKE SUPERIOR IRON CO. v. CATHERINE ERICKSON, ADM'X.

*Master and servant—Injury to contractor's employee—Fatal negligence.*

A mining company was sued for a fatal injury to the employee of one who had entered into a mining contract with the company. The terms of the contract, usage and the understanding of the parties being shown, the contractor could not be asked whether it was not his business to be on the lookout for danger.

A charge must be construed altogether and not by isolated sentences.

Legal privity may sometimes exist between one contracting party and the servants of the other, as where the servants are exposed to risk from being obliged to work upon the former's premises under an arrangement which binds him to keep the premises in safe condition.

Where a mining corporation contracting for the removal of ore reserves to itself such arrangements as are necessary for the protection of workmen, it is liable for such injuries as happen to employees of the contractors without the fault of the employees.

Negligence is generally a question of fact.

It is not contributory negligence for an employee who is in doubt about the safety of the place where he has to work, to defer

to the opinions and assurances of those who are supposed to know, and from their position are bound to have special knowledge, as to whether it is safe or not.

Error to Marquette.  Submitted October 18.  Decided October 29.

TRESPASS ON THE CASE.  Defendant brings error.

*W. P. Healy* and *G. V. N. Lothrop* for plaintiff in error.  Miners are presumed to knowingly incur the ordinary risks incident to mining, *Lehigh Valley Co. v. Jones*, 86 Penn. St., 432; 18 Alb. L. J. 212; *Johnson v. Boston*, 118 Mass., 114; an employer is not liable for injuries to an employee caused by the negligence of a fellow servant, and the relationship of fellow servants does not imply that they are engaged in precisely the same work, *Wilson v. Merry*, 1 H. L. Scotch Cas., 326; *Hall v. Johnson*, 3 H. & C., 589; *Morgan v. Vale of Neath Ry.*, 35 L. J., Q. B., 23; *Howells v. Landore Siemen's Steel Co.*, L. R. 10 Q. B., 62; *Albro v. Canal Co.*, 6 Cush., 75; *Gillshannon v. Stony Brook R. R.*, 10 Cush., 228; *Gilman v. Eastern R. R.*, 10 Allen, 239; *Russell v. Hudson R. R.*, 17 N. Y., 134; an employer is not liable for the negligence of an independent contractor working for him, *King v. N. Y. C. & H. R. R. R.*, 66 N. Y., 181; *Pack v. Mayor*, 8 N. Y., 222; *Blake v. Ferris*, 5 N. Y., 48; *De Forrest v. Wright*, 2 Mich., 368; *Moore v. Sanborn*, id., 519; *Reedie v. London Ry. Co.*, 4 Exch., 244; *Hilliard v. Richardson*, 3 Gray, 349; *Burke v. Norwich R. R.*, 34 Conn., 474; *Corbin v. Am. Mills Co.*, 27 Conn., 274; *Kelly v. Mayor*, 11 N. Y., 432; *Painter v. Mayor*, 46 Penn. St., 213; *Callahan v. B. & M. R. R.*, 23 Ia., 562; *Harkins v. Standard Refinery*, 122 Mass., 403; *Conners v. Hennessy*, 112 Mass., 96; *Wray v. Evans*, 80 Penn. St., 102; *Wilson v. Alleghany*, 79 Penn. St., 272; an employer is not liable for unexpected accidents that happen notwithstanding the exercise of care by an experienced fore-

man, *Ft. W., J. & S. R. R. v. Gildersleeve,* 33 Mich., 134; the negligence of a competent fellow servant is one of the risks assumed by an employée, *Davis v. D. & M. R. R.,* 20 Mich., 105; *Mich. Cent. R. R. v. Dolan,* 32 Mich., 512; *Warner v. Erie R. R.,* 39 N. Y., 468; *Feltham v. England,* L. R. 2 Q. B., 33; and if the injured person knew of the danger and worked without any special inducement from the principal employer, he cannot recover, *Dynen v. Leach,* 40 E. L. & E., 491; *Mad River R. R. v. Barber,* 5 Ohio St., 541; *Assop v. Yates,* 2 H. & N., 768; *Sullivan v. Ind. Mfg Co.,* 113 Mass., 396.

*George W. Hayden* for defendant in error. A company is liable for injuries resulting from the negligence of its agents within the scope of their duties, *Chic. & N. W. Ry. v. Bayfield,* 37 Mich., 205; *Ford v. Fitchburg R. R.,* 110 Mass., 240; *Flike v. Bost. & Alb. R. R.,* 53 N. Y., 549; *Brabbits v. C. & N. W. Ry.,* 38 Wis., 289; *Brothers v. Cartter,* 52 Mo., 373; *Tol., W. & W. R. R. v. O Connor,* 77 Ill., 396; *Snow v. Housatonic R. R.,* 8 Allen, 441; 2 South. L. Rev. (N. S.), 123; one who has a duty concurrent with the doing of certain work cannot escape responsibility for its performance by delegating the work to a contractor, *Pickard v. Smith,* 10 C. B. (N. S.), 470; *Whitely v. Pepper,* 2 Q. B. Div., 276; *Gray v. Pullen,* 5 B. & S., 970; the slightest superintendence and submission to it establish the relation of master and servant, *Rourke v. White Moss Colliery Co.,* 2 C. P. D., 205; 12 Amer. L. Rev., 69; where a mining company withholds the right to make arrangements for the protection of workmen, it is responsible for injuries to the employees of those who contract to do its work, *Perry v. Marsh,* 25 Ala., 659; *Marshall v. Stewart,* 33 E. L. & E., 1; *Gibson v. Pacific R. R.,* 46 Mo., 163; *Chic. & N. W. Ry. v. Sweet,* 45 Ill., 197; *Noyes v. Smith,* 28 Vt., 59; it is bound to perform the duty of protecting the workmen, *Farwell v. B. & W. R. R.,* 4 Metc., 49; and is liable for injury resulting

from a defect of which it might have known if it had taken reasonable care, *Paterson v. Wallace*, 28 E. L. & E., 50; *Ryan v. Fowler*, 24 N. Y., 414; it must see to it that the premises are always safe, *T., P. & W. Ry. v. Conroy*, 68 Ill., 560; *Laning v. N. Y. Cent. R. R.*, 49 N. Y., 532; a workman has a right to rest on the assurances of his superior as to their safety, *Patterson v. Pittsburg R. R.*, 76 Penn. St., 389; *Indianapolis Ry. v. Flanigan*, 77 Ill., 365; *T., W. & W. R. R. v. Fredericks*, 71 Ill., 294; and if he does not himself know they are dangerous, he is not guilty of contributory negligence, *Britton v. G. W. Cotton Co.*, L. R. 7 Exch., 137.

CAMPBELL, C. J.    Mrs. Erickson, the defendant in error, recovered a judgment in the court below, as administratrix of her deceased husband Andrew Erickson, who was killed by a falling rock while engaged in working in the mine of the plaintiff in error, July 9, 1877.

It appears that Erickson had been employed the day before his death as one of a mining gang under the management chiefly of Gustav Stenson, who with his partners had taken a contract for mining and hoisting ore at ninety-five cents per ton for ore and twenty-five cents per ton for rock—this contract having been made July 1, 1877, for a month, and similar contracts having been made in previous months from the beginning of April. Erickson was employed by the day at one dollar and fifty cents per day. The pay arrangement was that the company officers were to pay the men on the certificates of the contractors, deducting this pay from the final settlements.

These contracts were all let by Day and McEncroe as officers of the company, who had general charge for the company of the affairs in the mine.

The pit where these contractors were at work had been carried along the lode so as to leave the upper or hanging wall, which was at an angle of sixty-five degrees,

exposed from twenty to twenty-five feet high, and not far from the same distance along the level, with no support or timbering of the hanging wall in that space. Erickson was engaged in sinking a winze or ventilating shaft from this level, and had sunk it about two feet and eight inches when killed. The rock which killed him fell from about half way up the hanging wall, and was just over the winze.

The chief controversy relates to the question whether this rock was previously in a condition which made it so apparently dangerous as to require removal or timbering, and if so, on whom, if any one, was the risk and responsibility. Several collateral questions arose also.

Upon a careful inspection of the record we do not think any questions become material except those which bear on the rights and duties of the various parties in connection with the mine. The other errors assigned do not appear to be founded on sufficient showings in the record. The only one urged by counsel was the rejection of a question put on cross-examination to Stenson asking him whether it was not his business and that of his associates to be on the lookout and watch for dangerous places. We think that when the terms and conditions of his contract were shown, this was rather a deduction than a fact, and he could not properly be allowed or required to answer it. He was not precluded from explaining fully the mutual understanding of the contracting parties as to what the contract was, or as to usage.

It was claimed on the argument, and this claim is based on the assignments of error, that on the whole case there was no ground of recovery. And as reasons for this position several legal propositions are advanced which are chiefly as follows: That there could be no recovery if Erickson was in the employ of Stenson as a day laborer; or if he was not under control of the company or its officers and if Stenson and his associates

were to mine and do their work properly; or if he was willing to work after such examination as was shown. And it was claimed in various forms that Erickson undertook all the risks that were established. It will be more convenient to refer to the points raised in the way adopted by counsel than to pursue every subdivision separately.

There was evidence that the rock in question had been considered as dangerous some time before the contract of July, and that the attention of Day and McEncroe had been called to it. There was evidence of various attempts by sounding it with an iron bar to ascertain its safety. There was conflicting evidence as to some of the declarations of the mining officers on this subject. There was evidence on one side that they expressed themselves decidedly on its safety. There was also evidence to go to the jury that they retained the right to determine what large rocks should be removed and what timbering or propping should be done. There was also testimony of the increase of water oozing from the seams, claimed to indicate a gradual loosening. The theory of plaintiff in error was that the rock had been started by blasts from the winze, and that sufficient care had not been taken to examine it thereafter. It fell about two hours after a blast. Other matters of fact will be referred to in their place.

It is proper first to consider the respective positions of the parties. Day and McEncroe stood in the place of the mining company in making these contracts. There was no employment relation between them and Erickson, who was laboring under the contractors. So far as this changed the relative liabilities of the parties it must operate in this case. But while there are cases in which there is no duty or legal privity between principals and the servants of those who contract with them, this lack of privity is not universal and absolute. If, for example, a railway company were to contract with a firm of car-builders to build cars according to given

39 MICH.—63.

plans in places under the entire control of the builders, there could be no possible corporate responsibility for injuries received by workmen in their callings. But on the other hand it might be quite possible for men to be employed in piece-work in the shops of such companies where they retained more or less control, when for the failure of a corporate duty the workmen or strangers injured by that failure might have a cause of action for the wrong directly against the corporation, although it had not employed them. The case of *The City of Detroit v. Corey*, 9 Mich., 165, is a case where the corporation was held liable for neglect of a contractor in not properly guarding against danger from an excavation in a public street. The same principle was applied in *Darmstaetter v. Moynahan*, 27 Mich., 188; *McWilliams v. Detroit Central Mills Co.*, 31 Mich., 274; *Gardner v. Smith*, 7 Mich., 410; *Bay City & E. Sag. R. R. Co. v. Austin*, 21 Mich., 390; *Continental Imp. Co. v. Ives*, 30 Mich., 448; *G. R. & Ind. R. R. Co. v. Southwick*, 30 Mich., 444.

No doubt the range of the owner's responsibility is very much less in most cases where contractors are employed and have their own servants at work, than where the servants are employed by the proprietors. The main question in such cases is whether any duty remained which sprang from the proprietor's own position, and from the violation of which the damage arose. In the present case there are two principal inquiries, which are *first*, whether the death of Erickson was due to the fault of the mining company in not doing what they were bound to do for the protection of those working in their mines; and *second*, whether Erickson himself was responsible for running the risk which proved fatal. Of course both of these questions are aside from the third question, whether the death was accidental, and not due to the fault of any one.

The court below told the jury that there could be no recovery in this case if the duty was on Stenson and

his associates to guard against such risks, and that the same was true if Erickson contributed to the injury by his own want of care. They were also told that there was no ground of recovery if the falling of the rock was not under circumstances which showed that the company had been guilty of such negligence as showed such want of care and caution as prudent persons would not be guilty of. They were particularly directed that unless the conduct of Day and McEncroe was thus negligent and the cause of the mischief, there could be no recovery, and that the company would be liable for their neglect or misconduct and not for that of any one else appearing in the case.

We think the court was correct in holding that Day and McEncroe represented the company for this purpose. They appear to have had entire control of all the business that is involved in the record. And we think there is no room to question the propriety of these rulings if they were applicable, and not neutralized by other instructions. In this connection it is proper to notice one of the special assignments of error which is calculated to give a wrong impression. The court is represented as telling the jury to inquire whether the company used such care and precautions as "relieved them from liability in this suit,"—and it is claimed this left a question of law to the jury. But the next sentence of the charge explained what would or would not make them liable. Isolated sentences cannot be allowed to be considered apart from their context. The instructions were not so separated as to create confusion, but were really but a single and correct ruling.

We think that unless the case was one too plain to go to the jury on that point, it was properly left to them to say whether the accident occurred without any one's fault or neglect. It is not for us to draw inferences of fact in such cases. There was certainly evidence to go to the jury indicating that there should

have been measures taken by some one to either remove or prop the rock that fell.

We think also that there was properly before them a question whether Erickson himself was guilty of contributory negligence.   A great deal of testimony was introduced to show that there was no apparent danger which could be discovered, and that the company was justified in treating the rock as safe.   There was also much testimony to the contrary.   The place was one not easily examined by the ordinary mining lights.   If there was no apparent danger it was not recklessness to work under this rock.   If on the other hand there was real danger and Erickson was informed of it on the day he entered the mine, there was nevertheless evidence that those about him who had practical knowledge of the mine in which he was a stranger, acted as if they did not think so, and the guards usually to be expected against danger were absent.   The duty of examining such places after a blast, is confined by the testimony to dangerous places, and not made out clearly even there as devolving on Erickson.   The jury have necessarily found he was not careless, and there was testimony on which they could lawfully act.

The question next arises whether the responsibility of protecting Erickson from such a danger, if supposed to exist, rested on his immediate employers.   This was also dependent on testimony, and involved some inquiry into their relations with the company.

Does it then appear so as to bind the court and jury that the contractors in this particular service had the responsibility confined to them, of guarding their workmen from the probable dangers of their employment? There is no dispute in this case upon the general principle of law that a responsibility lies somewhere to prevent workmen from being exposed, without such protection as is reasonably required in a dangerous business.   The law is very clear that it is culpable negligence to avoid

keeping mining works as well protected as usual prudence would dictate. And there is no doubt that a common danger in mines is from falling rocks. The hanging wall being on an angle—in this instance of 65 degrees—with the level, any lack of cohesion in its parts must lead to the fall of such part of it as is seriously loosened, and that fall must be hastened by the concussion of the air or the blows of flying rocks thrown against it by blasting below and near it. In the present case the rock which fell being directly above the winze, and only about twelve feet from its mouth, every blast in that shaft would necessarily throw more or less rock against this sloping roof; and this must continue until the shaft is either finished or opened to such a depth as to deaden or destroy the upward force of the explosions.

The fact that this rock was considered dangerous and so reported several weeks before the accident, and the further fact if true (and the jury probably believed it) that there was a perceptible increase in the dangerous symptoms, certainly imposed a duty of either removing the real danger or using such means as are generally deemed adequate to determine whether any danger existed. The further fact that the hanging wall was composed of a species of rock whose thickness was not generally found uniform, and which was sometimes thin enough to possess no very great resisting power to shocks or disintegrating agencies was one which could not be left out of view by any prudent calculation. A broad expanse of some twenty-five feet square of rock only supported by its own cohesive power from falling may, according to the testimony, have weak points where it may give way unless propped, or unless the unreliable mass is removed. There was testimony, which it is not our province to pass upon, which indicated, if believed, that no reliable test could be found for determining the solidity of the rock when water was escaping through such seams as existed in this wall.

We think there was a question fairly open whether

neglect to guard against the accident was not culpable. The jury have found it was.

If so, the only remaining question is whether the jury had proof before them whereby they could lawfully hold the company to this responsibility.

Under the contracts shown by the proofs, the contractors had nothing to do with planning the mine or selecting their working ground, unless with very small discretionary choice. The shafts and levels and the winze must necessarily have been determined on by the owners of the mine, and the mining gang worked on short contracts. Their business, except in sinking the winze, was merely stripping the lode of its ore, and the winze was apparently, as it must usually be, down the lode. The pay for getting out dead rock was but little beyond one-fourth that of getting out ore, and work in the rock outside of the lode was not contemplated. They testified, and the jury must have believed them, that the company reserved the power of determining when and where dangerous rock in the wall should be removed, if requiring removal by blasting, and of locating the supporting pillars or placing timbers to prop the wall. Such timbering would be expensive, and is not provided for by the contracts which are confined to rock and ore blasting and removal. Either the mine must be unguarded, or else, on this state of facts, the company must guard it.

Under such circumstances it is very plain that the company being the owners of the dangerous property, and inviting men to work on it, their responsibility for its protection cannot be changed by the fact that the work is done by the ton instead of by the day, or by the fact that the men who contract with them have laborers of their own. By employing men to act for them in either way they hold out the assurance that they can work in the mine on the ordinary conditions of safety usually found in such places. They guarantee nothing more than is usual among prudent owners,

and they do not insure against that which is purely accidental. But they do tacitly represent that they have not been and will not be reckless themselves.

If men choose with their eyes open to run into danger they may forfeit claims to redress. But it cannot be considered reckless in men who are in doubt upon a matter which cannot be determined absolutely, to pay some regard to the opinions and assurances of those who are supposed to have, and by their position are bound to have special knowledge called for by their larger responsibilities. In the present case the assurances of safety given by the mining agents cannot be disregarded, and were rightly subject to consideration by the jury.

We think the jury were very carefully and correctly instructed concerning their duty, and that there was testimony which warranted their verdict.

There is no error in the record, and the judgment must be affirmed with costs.

The other Justices concurred.