Guinard vs. Knapp-Stout & Co. Company.

GUINARD, Respondent, vs. THE KNAPP-STOUT & Co. COMPANY, Appellant.

*March 11 — April 3, 1895.*

*Instructions to jury: Applicability to be decided by the court: Curing error by subsequent charge: Injury to employee from dangerous machinery: Assumption of risk: Proximate cause: Special verdict.*

1. It is the duty of the court to decide whether a proposed instruction is applicable to the evidence, and it is error, upon giving an instruction, to say that the jury may use it as far as they find it applicable.

2. In an action for personal injuries sustained by an employee while oiling machinery in a sawmill, instructions asked by defendant, which were particularly applicable to the testimony and correctly stated the law as to assumption of risk and contributory negligence, were given with the statement that the jury might use them as far as they found them applicable. *Held,* that the error was not cured by subsequently charging the jury to the effect that a man must use due diligence and use his senses, and if he fails to use such diligence as a man of ordinary prudence would, and thereby suffers an injury, he has not used ordinary care.

3. In submitting for special verdict the question whether plaintiff was injured by defendant's want of ordinary care, which caused the injury, it was error to charge that if the jury found that there was a want of ordinary care on defendant's part they should answer the question in the affirmative, since this withdrew from them the question whether such want of ordinary care was the proximate cause of the injury.

4. From the mere fact that an employee, after being engaged in oiling the machinery in a sawmill, asked to be retained in such work, it cannot be held that he represented himself as competent for the position and assumed all the risks, it not appearing that such request had anything to do with his retention.

APPEAL from a judgment of the circuit court for Dunn county: JOHN K. PARISH, Judge. *Reversed.*

Personal injuries. The plaintiff was injured while employed in the defendant's sawmill, July 9, 1892, he being then twenty-seven years of age. He was oiling a rapidly

revolving shaft at the time of the injury, and his coat sleeve was caught in a set-screw which projected from the collar upon the shaft, and he was whirled around the shaft, and lost a part of his left arm, and sustained other serious injuries. It appeared that he had previously worked for the defendant company for five seasons; four years being spent in work in the woods and on the pond, and the last season being spent in running an edger in the second story of the mill. When the mill started in April, 1892, he was again employed, and his testimony tends to show that his employment was not for any particular kind of work, but for general work in the mill. Very soon after he went to work he was directed by the millwright in charge to oil the machinery of the mill, a task which consumes all the time of one employee; and he remained at this business until the accident happened. The shaft by which he was injured was on the first floor of the mill, and there was testimony tending to show that the light at that place was poor. The testimony of the plaintiff further tended to show that when he was set about the job of oiling the machinery he was directed by the millwright to clean out all the oil holes with a wire before putting in oil; that he was also directed to oil the machinery on the second story when the mill was idle at noon times, and to oil the balance of the machinery, including the machinery by which he was injured, when it was in motion; that he was following these directions when he was injured, and that he then stood facing a perpendicular post or timber; that on this post, and about six feet above the floor, was an iron box or bearing, in which a horizontal shaft rested, and on either side of this box, fastened to the box by means of set-screws, were iron rings or collars, which revolved with the shaft; that these set-screws projected from the iron collars about three quarters of an inch, and a groove or notch was cut into the post for the purpose of allowing the set-screws to revolve; that these

set-screws were about six inches apart, and that the oil hole, in which it was the plaintiff's duty to put oil to lubricate the bearing, was a little above midway between the set-screws; that the plaintiff was reaching over the revolving set-screws with his left hand to dig out the oil hole preparatory to oiling the bearing; that there was no guard or covering for the shaft or set-screws, and that when in rapid motion the heads of the set-screws had the appearance of a solid band on the collar. It further appeared that immediately above the head of the plaintiff was a rapidly moving iron chain, and immediately to his right a revolving shaft at a height of about three feet from the floor and at right angles with the upper shaft, so that the plaintiff was standing in the only practicable place in which he could stand to oil the upper shaft. He had an oil can in his right hand, and a piece of wire to dig out the hole in his left hand; and while he was digging it out the set-screw caught the left wristband of his jacket, drew his hand and forearm in between the shaft and the post, and caused the injuries before mentioned. The plaintiff also claimed that he had received no instructions or warnings as to the dangers of the business, and had never noticed the set-screws in question, because his attention had not been directed to the machinery by his duties, except when it was in rapid motion, and when in motion he claimed that the set-screws had the appearance of a solid band.

The following special verdict was returned by the jury: (1) Was the defendant a duly organized corporation at the time mentioned in the plaintiff's complaint, engaged in operating a sawmill, as alleged therein? A. (By the court.) Yes. (2) Was the plaintiff employed generally to do ordinary work in and about said sawmill by the defendant, and as such did he perform the duty of oiling the machinery therein? A. Yes. (3) Did the plaintiff apply to the defendant's millwright, before he began work, to be permitted to oil the machinery in its said mill? A. No. (4) Did

plaintiff, after being engaged in oiling the machinery, ask the defendant's foreman that he be retained in said work of oiling said machinery? *A.* Yes. (5) Was the plaintiff injured by being drawn into the machinery of defendant's mill, as alleged in the complaint? *A.* (By the court.) Yes. (6) Did defendant provide reasonably safe machinery upon and about which the plaintiff was required to perform the said work? *A.* No. (7) Did the plaintiff, when he commenced his work as oiler, inform defendant that he was ignorant and without experience in the said work of greasing the machinery? *A.* Yes. (8) Did defendant inform the plaintiff of any danger in relation to the said machinery before he received his injuries? *A.* No. (9) Was the plaintiff injured by the want of ordinary care on defendant's part, which caused the said injuries? *A.* Yes. (10) Was there any want of ordinary care on the part of the plaintiff which in any manner contributed to his said injuries? *A.* No. (11) Could plaintiff, by the exercise of ordinary care, have learned of the dangerous condition of the machinery upon which he was injured? *A.* No. (12) How much damages has the plaintiff sustained on account of said injuries? *A.* $6,155. We find for the plaintiff and against defendant.

From judgment for the plaintiff upon this verdict the defendant appealed.

*V. W. James,* for the appellant, argued, among other things, that by asking to be given the position of oiler, and by asking to be retained in such position, the plaintiff represented himself as competent to discharge its duties and to apprehend and avoid its dangers. *Wagner v. H. W. Jayne Chem. Co.* 147 Pa. St. 475; *Union Pac. R. Co. v. Estes,* 37 Kan. 715; *Pittsburgh, C. & St. L. R. Co. v. Adams,* 105 Ind. 151; *Bartonshill C. Co. v. Reid,* 3 Macqueen, App. Cas. 284; *Wilson v. Merry,* L. R. 1 S. & D. App. Cas. 331; *Brazil B. C. Co. v. Young,* 117 Ind. 524; *Cole v. C. & N. W. R. Co.* 71

Wis. 114; *Sherman v. Menominee R. L. Co.* 77 Wis. 14;
*Chicago, R. I. & P. R. Co. v. Clark,* 108 Ill. 118.

For the respondent there was a brief by *John R. Mathews*
and *C. T. Bundy,* and oral argument by *Mr. Bundy.*

WINSLOW, J. The vital questions which were presented
by the pleadings and the evidence in this case were: (1)
Whether the defendant was guilty of negligence which was
the proximate cause of plaintiff's injury, either in providing
unsafe machinery or in failing to instruct and warn the
plaintiff of its dangerous character; (2) whether the plaint-
iff himself was guilty of contributory negligence in not see-
ing and avoiding the revolving set-screw. Both of these
questions were answered by the jury favorably to the plaint-
iff. We regard these questions as fairly questions for the
jury and not for the court; and it necessarily follows that,
if no errors were committed in the rulings on testimony or
in the instructions to the jury, the judgment in this case
cannot be disturbed. Examination of the charge, however,
convinces us that there were errors in the instructions which
necessitate reversal of the case.

The defendant requested the giving of the following in-
struction: "If you find that the plaintiff engaged with the
defendant in the duty of oiling the machinery of its sawmill
without at the time fully understanding or comprehending
the dangers incident to his business, yet if you find that be-
tween the time of his employment and the time he was in-
jured he learned of these dangers, or in the course of his
employment ought to have known of the liability to acci-
dent by being entangled in the machinery, as he was, it is
your duty to find that he assumed the risk of such injury as
incident to his employment, and you cannot attribute the
accident to the negligence of the defendant." The court
read this instruction to the jury, and added: "Now, gentle-
men, as a general proposition of law that is correct, and as

far as you find it applicable you may use it." The defendant also asked the following instruction: " It is the duty of the plaintiff to look at the machinery about which he is employed to work, and to apprise himself of any danger afforded by the machinery itself and which he could have discovered or ought to have discovered by a proper examination thereof or by the use of his sight and other senses; and if he failed during the course of his employment, and while engaged in the task of oiling the machinery, to apprise himself of the dangers which he ought to have seen, then the plaintiff was not in the exercise of ordinary care or prudence, and it is your duty to so find." This the court read to the jury, and added: " That you may consider as far as you find it applicable."

The instructions above quoted stated correct propositions of law and were applicable to the testimony in the case. The appellant was, therefore, entitled to have them given to the jury without modification. It is plainly the duty of the court, and not of the jury, to decide when a legal proposition is applicable to the evidence. To give the jury a legal proposition, and say to them: " You may use this as far as you find it applicable," comes very near being an abdication of the functions of the court. Under such an instruction the jury is given full license to decide that the proposition has no application to the case and disregard it entirely. The charge should contain only such propositions as are to be applied to the evidence in the case. The court says to the jury, in substance: " These are the propositions of law applicable to the evidence. Take them, apply them to the case, and return your verdict." Such being the proper functions of the court and the jury, it seems very plain that the court erred in leaving it to the jury to decide whether the instructions were applicable to the case. A similar remark was disapproved by this court in *Duthie v. Washburn*, 87 Wis. 231.

Guinard vs. Knapp-Stout & Co. Company.

It is said that the court subsequently cured the error by charging the jury to the effect that a man must use due diligence and use his senses, and if he fails to use such diligence as a man of ordinary prudence would, and thereby suffers an injury, then he has not used ordinary care. But we cannot regard this as any fair equivalent of the propositions first above quoted.

The ninth question of the special verdict asks whether the plaintiff was injured by defendant's want of ordinary care, which caused the injury. In submitting this question to the jury the trial judge said: "If you find that there was a lack of ordinary care on the part of the defendant, you will answer this question accordingly. If you are not so satisfied, you will answer this question, 'No.' . . . If you are satisfied that it has been shown by a preponderance of the evidence that there was a want of ordinary care, your answer must be, 'Yes.' If you are not so satisfied, your answer to question 9 will be, 'No.'" Nowhere in the charge do we find these expressions qualified. This seems to us to be clearly erroneous. The question asks whether there was a lack of ordinary care which caused the injury. The instruction says, in effect, that if there was lack of ordinary care it did cause the injury. This result does not follow. The jury must find not only the lack of care but that it was the proximate cause of the injury. *Craven v. Smith*, 89 Wis. 119.

We are asked to hold that because the plaintiff, some time after he was employed as an oiler, applied to be retained in that capacity, he thereby represented himself as competent for the position and assumed all the risks. We cannot so hold. There is no evidence or finding that he was retained in his position on account of his request, or that the request had anything to do with the defendant's action in the premises.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.