BURNSIDE *v.* NOVELTY MANUFACTURING CO.

1. MASTER AND SERVANT—DEFECTIVE MACHINERY—INSPECTION—
QUESTION FOR JURY.

A pressman was injured by the falling of the upper die of the
machine at which he was working. The die had fallen on
several occasions, on some of which it had appeared from an
examination of the mechanism, which was concealed within
the machine, that the trouble was in the cutting of the
clutch pin. After the accident, the machine was taken apart,
and it was found that the clutch pin was cut. A defect in
the pin could be ascertained only by taking the machine apart,
an operation requiring from 20 to 30 minutes. There was tes-
timony showing that the pin might cut in a short time, or it
might take some time to cut. *Held,* that it was for the jury
to say whether the pin was not gradually cutting, and
whether proper inspection would not have prevented the
injury.

2. SAME—ASSUMPTION OF RISK—RELIANCE ON SUPERIOR.

A pressman was relieved from any assumption of risk based
upon knowledge that the machine at which he was set to
work had continuously made trouble in the way which
caused his injury, where the foreman, an expert familiar
with the interior mechanism of the machine, who was ex-
pressly charged by the employer with the duty of inspecting
and repairing it, assured him, in response to an inquiry, that
there was no danger of further accident, and he went to work
relying upon such assurance.

Error to Jackson; Peck, J. Submitted May 9, 1899.
Decided September 12, 1899.

Case by Hugh Burnside against the Novelty Manu-
facturing Company for personal injuries. From a judg-
ment for plaintiff, defendant brings error. Affirmed.

The following is the charge of the court below:

"This, gentlemen, is an action of negligence. * * *
I instruct you that it was the defendant's duty to furnish

the plaintiff with a suitable press with which to perform the work required of him, — a press reasonably well adapted to do the work which he was set to perform upon it. The evidence is undisputed in this case that the defendant did furnish a suitable press, and one well adapted to do the work which the plaintiff was set to perform with it. Therefore you will consider that the defendant performed its full duty in that regard, and is guilty of no negligence whatever in that respect. It was the defendant's duty, also, to inspect the machine as often as was reasonably necessary, under the circumstances, to keep the machine in proper adjustment and in reasonable repair. This duty, the plaintiff contends here, was not performed by the defendant, and its failure to perform its duty in this regard constitutes the negligence which the plaintiff relies upon as the basis of his action. And I instruct you that there is no other negligence, if any existed, which could be relied upon by the plaintiff as the basis of his suit. Unless, therefore, negligence in one of the respects which I have pointed out as being the proper basis of the plaintiff's claim existed, and has been shown by a preponderance of the evidence, the defendant violated no duty which it owed to the plaintiff, and your verdict would be for the defendant.

"Turning our attention now more particularly to the special claims of negligence made on behalf of the plaintiff, I instruct you, with reference to the subject of inspection, that it was the defendant's duty to inspect the machine as often as was reasonably necessary, under the circumstances, to accomplish the purpose for which an inspection is made, viz., in a general way to ascertain whether the press was in proper condition of repair and adjustment, with a view to repairing it or properly adjusting it in case it should be found faulty in either of these respects, so that the machine might be put in proper and reasonable repair and safety. A less frequent inspection might be sufficient in the case of some machines, and under some circumstances, than would be required of other machines, or under other conditions and circumstances. One machine, used for a certain purpose, and having only a moderate element of danger in its use, might, and probably would, require a less frequent inspection in order to satisfy the master's duty than would be required in the case of another machine, the use of which involved the operator or others in imminent and extreme peril. Now, in determin-

ing this question, you should consider the circumstances and conditions shown by the evidence to have existed here. Consider the machine, the danger necessarily involved in its use, its character, and what was to be done with it. In fact, you should consider all the circumstances which have been put before you in the evidence, and determine therefrom whether or not it has been shown, and by a preponderance of the evidence, that the defendant failed to inspect this machine as often and as fully as was its duty to do, under the circumstances. If, on such an examination of the evidence, you find that the defendant was not guilty of negligence in making inspections of this machine, then the subject of inspection, and the defendant's claimed fault for failing to make them, is out of the case, and you should so regard it.

"On the other hand, if you find from the evidence that the defendant was negligent in this respect, then you should follow up that fact by examining the evidence, and determining the next question,—whether that negligence resulted in the injury complained of. If you find that there was negligence in making the inspections, you should consider the defendant company bound by such knowledge as a proper and timely inspection would have disclosed; and if you find from the evidence that a proper and timely inspection would have revealed the fact that the press was not in reasonable repair, or out of adjustment, then I instruct you that the defendant's duty would have required it to repair the machine, or put it in proper adjustment, before using it; and, if the defendant failed so to repair it, it failed to perform its duty in that regard, and such failure would constitute negligence. The plaintiff contends that the press in question was out of repair at the time of the accident. I charge you that it was the defendant's duty to keep the machine in reasonable repair. The duty to repair attached to the defendant should have been performed by it as soon as the defendant had knowledge of a defective condition, or notice by inspection or otherwise that the machine needed repair or adjustment, and you should regard the duty of the defendant to begin its action of repair or adjustment as soon as it had knowledge or notice of the existence of the defective condition. But before the defendant would be liable for the defective condition, as for negligence, the defendant must have had knowledge of its existence, or have had notice,—that is, have been chargeable with knowledge. In other words,

its duty to repair would not attach until it knew of a faulty condition in the machine, or, under the circumstances, as a reasonable man, ought to have known of it. I charge you that the defendant was not bound to keep this machine in perfect adjustment or in perfect repair. It was bound to keep it in reasonable repair, under the circumstances. It is also true, as a matter of law, that a party who uses in its factory or shop a machine which is exceedingly or unusually dangerous to the operator or others is bound to increase his diligence in caring for it, so that what would be reasonable with reference to a comparatively innocent or harmless machine, in keeping it in repair so it could be operated, would not satisfy the duty of a party who used an unusually dangerous or hazardous machine; the rule being that, as the danger of the use of the machine to the operator or others increases, the duty of the proprietor or master to take care of it, and protect those who might be injured by it, also increases.

"Now, gentlemen, I leave it for you to say, under the testimony in this case, whether the plaintiff has shown, and by a preponderance of evidence, that the defendant was negligent or failed to perform its duty in either one of the three respects: *First*, in failing to make frequent enough inspections; *second*, in failing to adjust the machine and keep it in proper adjustment; and, *third*, in failing to keep it in proper repair. If the plaintiff has failed to establish either of these propositions by a preponderance of the evidence, his action here must fail, whatever other conditions are found to be present, and your verdict will be for the defendant. On the other hand, if you are satisfied by a preponderance of the evidence that the defendant has failed to perform its duty in any one of these respects, you should regard such failure as negligent conduct, and next inquire whether or not that negligence, under the evidence in this case, produced the injury of which the plaintiff complains.

"Negligence without injury amounts to nothing. No verdict can be based upon negligence, although proved, unless that negligence caused the accident. And, if you find the defendant was negligent in this case, you must determine from the evidence whether or not it has also been established, and by a preponderance of the evidence, that the injury which occurred to the plaintiff was caused by that negligence. And I instruct you here, gentlemen, that, under the pleadings and evidence in this case, the

plaintiff cannot complain of any erratic or unusual conduct of this machine as to its falling, as the expression has been used upon the trial.   If the defendant was negligent, and as a result of that negligence the machine made second or third or further revolutions after being only once tripped, and, as the result of a second or other revolution so caused, the plaintiff suffered the accident of which he complains, and lost his fingers, he cannot recover in this case, as that is not the case which he presents to us by his declaration and proofs.   So that the only material inquiry in this regard is this:   Whether the negligence complained of in this case, if it is found to have been well proved, caused the machine to fall, and the accident resulted from that falling.   If it resulted from any other cause, whatever other conditions may be found to be present, or however serious the plaintiff's misfortune, he cannot recover in this case, and your verdict will be for the defendant.   If, on the other hand, the accident did result from the falling of the machine on the occasion in question, and you find that to be true by a preponderance of the evidence, you should regard this element of the plaintiff's case as established.

"The next and second general proposition in the case is the question of contributory negligence.   'Contributory negligence,' as the term is used in conditions like the present, means negligence on the part of the plaintiff, which, coupled with negligence on the part of the defendant, produced the injury, as a common result.   Contributory negligence is such negligence on the part of the plaintiff as contributed to the result complained of.   Now, whenever there is contributory negligence such as this, the plaintiff cannot recover; for the law regards it as a case of mutual fault, and neither party can recover against the other.   Nor would it make any difference although the aggregate of negligence which produced the result was very much more contributed to by the defendant than the plaintiff.   If it were 75 per cent. or 95 per cent. the defendant's negligence, and only 25 or 5 per cent. the plaintiff's, still the plaintiff could not recover.   It is a part of the plaintiff's case here to satisfy the jury, by a preponderance of the evidence, that he was not himself guilty of contributory negligence,— that he was at the time in the exercise of due care, and did not by his own carelessness in any way contribute to the unfortunate result which fell upon him.   It is urged on behalf of the defendant that it was not necessary for him to put his hand under the

upper die on this press, or between the two dies at all, and that the fact of his putting his hand under the upper die was contributory negligence on his part. Viewing the case from the aspect or point of view of contributory negligence, I instruct you that unless you are able to say, by a preponderance of the evidence, that the plaintiff was entirely free from fault and carelessness in putting his hand under that press, your verdict should be for the defendant, whatever other conditions you find to be present in the case. Whether his conduct on that occasion was negligent or otherwise, is for the jury to determine from the evidence in the case bearing upon that subject. I instruct you to carefully consider all the evidence bearing upon that question, and give it patient and careful examination, and if, after such consideration, you reach the conclusion, and by a preponderance of the evidence, that the plaintiff was not guilty of carelessness which contributed to the accident, in putting his hand under the press, or in any of his conduct there on that occasion, which resulted in his injury, then you should regard this proposition as established. If you do not so find, the plaintiff cannot recover, and your verdict will be for the defendant.

"The third general branch of the case, to which I now call your attention, relates to what has been spoken of during the trial as the plaintiff's assumption of the risk. Stated in other words, and with no effort at technical accuracy, the principle upon which this case is based is this: That every man who enters into the employment of another assumes the risk of all known or obvious dangers incident to that employment, and, if accident or injury results to him because of any such obvious or known danger, he cannot complain, and the employer is not liable. Now, that refers to risks or dangers incident to the employment which are obvious, open to his view, or which, if not open to his view, are such as he has knowledge of when he goes into the employment or continues it. All risks and perils incident to the conduct of the work which he undertakes to do, and which are open to his view, or obvious, or of which he has knowledge, he takes the risk—the chances—of himself, if he continues in the employment without protest.

"This branch of the case makes it important for you to consider precisely the condition of things that existed at and before the time of this unfortunate accident. The

plaintiff, Burnside, testifies that about two weeks before
the accident (I am giving you only the substance of his
testimony) this machine went wrong, and he saw it; that
(substantially) it dropped; that it did the very thing
which it did when his hand was injured.   He knew then,
when he saw that conduct on the part of the machine,
what it did then; and he swears that it had previously, to
his knowledge, been guilty of such erratic conduct.   If he
had gone to work after such knowledge, and nothing had
occurred to relieve him from the assumption of the risk,
he would have taken the chances of its doing the same
thing again, and could not be heard to complain if it did.
He would have done what the law says any party does
who enters upon employment and continues it with knowl-
edge of the risks which are incident to it.   And so, in this
case, Mr. Burnside must be held to have taken the chances
of this machine falling again, unless something had oc-
curred after he saw it fall last, about two weeks before
the accident, and between that time and the time of the
accident, to relieve him from that assumption.   He claims
that something did occur to relieve him from that risk,
and imposed the risk upon the defendant; and that some-
thing is this:  That on the day he began to use this
machine (Monday), the day before his accident, in sub-
stance, he asked Mr. Ross, the press foreman there, if the
machine would drop when it got to the top, and Mr. Ross
replied that it would not, and that the next morning he
asked him if the machine was all right, and Mr. Ross
replied that it was,—that it was safe, or some such thing.

" Now, gentlemen, I charge you that the plaintiff would
not be relieved from the assumption of the risk because of
any opinion Mr. Ross may have expressed there on that
occasion; if it was simply Mr. Ross' judgment that was
being expressed there to him, that the machine would not
drop and was all right, that would not relieve Mr. Burn-
side from the assumption of the risk.   He claims that
there was more to it than that.   He contends that by the
use of those words, and under the circumstances then
surrounding them, and which had surrounded them since
the time when he observed the machine last fall, about
two weeks before, Mr. Ross' language bears this construc-
tion, and Mr. Burnside understood him to assure him
(Burnside) that the machine had been repaired or fixed up
since it last dropped, so as to obviate the danger of the
upper die dropping.   Now, gentlemen, I charge you that

if you find from the evidence, under the circumstances that surrounded the parties at that time, that by that language Mr. Ross meant to convey to Mr. Burnside an assurance that, since the die had dropped last, the machine had been fixed or repaired so that it would not drop now, and that Mr. Burnside so understood it, and as a reasonable man was entitled to so understand it, and did rely upon it as such, then you would be justified in finding that Mr. Burnside was relieved from the assumption of the risk of its dropping, which he otherwise had undertaken or would undertake. But if that is not established by a preponderance of the evidence; if you cannot say that that was the meaning of the language, under the circumstances, and meant to be, and that Mr. Burnside, as a reasonable man, was not justified in so understanding it, or did not understand it and so rely upon it,—then you should regard him as still assuming the risk of the die dropping, and in that event your verdict should be for the defendant. And I give you, in that connection, the plaintiff's fifth request to charge, as correct: ' If you find from the evidence the plaintiff made the inquiries on Monday and Tuesday preceding the accident which he claims to have made, and Ross replied as plaintiff testifies, and you further find that the plaintiff, as a reasonable man, had a right to, and did, believe from such replies that the press had been so repaired or fixed since it dropped the last time, about two weeks before, as to obviate the danger of the die dropping again, in such case he would not be held to have assumed the risk of the die dropping. But if this is not established, and by a preponderance of the evidence, your verdict should be for the defendant.'

" If the plaintiff has failed to establish his case in these essential particulars, which I have instructed you are the necessary ingredients to constitute it, or any of them, your verdict should be for the defendant. If all of them are found by you to have been established by the evidence, and a preponderance of it, your verdict should be for the plaintiff, and you will then consider the question of damages. * * *"

*Wilson & Cobb*, for appellant.

*Blair, Smith & Townsend*, for appellee.

LONG, J. This suit was brought to recover damages for injuries suffered while operating one of defendant's

presses.  The basis of the action, as charged in the decla-
ration, is the negligent failure of defendant to furnish for
plaintiff's use a properly adjusted and reasonably safe
press, and particularly to furnish a press for forming
stove tops, which should be so adjusted, and in such a
reasonably safe condition, that, when the same was being
operated by means of a foot treadle, the upper die would
only descend from its high position to and against. the
lower die when being operated.   The declaration charges
that a machine or press was furnished which was improp-
erly adjusted and in a dangerous condition, in that the
said upper die would not, as it should have done, uni-
formly and invariably stop at its highest position when the
operator's foot was removed from said treadle, and remain
in such position until said operator renewed such pres-
sure, but, on the contrary thereof, was likely to fall at
any time and catch the hands of such operator, of all of
which the said defendant had notice and the said plaintiff
was ignorant.

The second count of the declaration is substantially the
same as the first, with the further averment that on a few
occasions the said upper die had improperly fallen, and
before commencing work with said press on April 20,
1897 (the day the injury was received), plaintiff asked
the defendant's foreman, one John Ross, who had charge
of said machines and presses and the repairs thereof,
whether said press was safe, and whether there was any
danger of said upper die falling, whereupon said Ross
assured the plaintiff that said machine was safe, and that
there was no danger of said die falling; and that, in con-
sequence of such assurances, the plaintiff then and there
commenced work on said press.

The press in question is known as an "extra heavy,
wide bed, double crank press."   The side columns are
about 7 feet high, and the distance between them is 52
inches.   The ram to which the upper die is attached is
hung to eccentrics on the shaft.   On the right-hand end
of the shaft is a large wheel, which is geared into a pinion

wheel below it, which is connected with the power by means of a tight pulley. There is also a loose pulley. There is a bedplate, to which the lower die is attached, and the faces of the dies are about 2½ inches apart when in position. On the inner face of the large wheel are four blocks or dogs to engage with the clutch pin. This large wheel is loose on the shaft, and, when the power is on, is constantly revolving. The press is operated by means of a clutch mechanism. This clutch mechanism is principally contained in the shaft. The shaft is considerably enlarged next to the large wheel, and a hole is bored through from top to bottom, in which the clutch beam plays. Connecting with this hole, another hole is bored out through the face of the enlarged part of the shaft, coming out on a level with the dogs on the large wheel, in which the clutch pin plays. The clutch beam is shaped like an ordinary tenpin, except that a portion of the lower end is turned down, leaving a shoulder above. The clutch pin is a cylindrical piece of steel, about 5 inches long and 2 and 7-16 inches in diameter, with a hole in the rear end, through which the ball end of the clutch beam passes. Near the bottom of the clutch-beam hole, a hole is bored obliquely upward and forward, in which is inserted a hollow steel tube, containing a powerful spring. This spring presses strongly against the bottom of the clutch beam, and, when the clutch lever is released, forces the bottom backward and the top forward, moving the clutch pin out to engage with the dogs on the wheel. The clutch lever is a semicircular piece immediately below the clutch beam, with a channel wide at one end, and gradually narrowing to the other end. When the press is at rest, the bottom of the clutch beam rests in this channel, and retains the clutch pin within its hole. One end of the clutch lever is pivoted on the brake, which, in the shape of a lyre, surrounds the enlarged part of the shaft. The other end is connected with the top of the other end of the brake by a strong coil spring, and a chain passes from this free end of the lever to a treadle in front and at the

right of the press.   The operator presses this treadle with his foot.   This pulls down the end of the clutch lever, and releases the clutch beam from the channel.   As soon as the beam is released, the beam spring forces the clutch pin out, which engages with some one of the four dogs in the large gear-wheel, and the upper die descends.   As the shaft revolves, the clutch beam passes by the clutch lever, which is pulled back to its place by the coil spring, and, as the revolution continues, the clutch beam comes back to the lever, striking the wide part of the channel, and the taper of the channel gradually pushes the bottom end of the beam to the front, and pulls the clutch pin back into its hole, and the press stops.   There is a bolt through the upper ends of the brake arms, with a thumb nut, by which the brake can be tightened.

It appears that the press was purchased in December, 1894, and was put in operation in February, 1895.   On the second day of its operation it did not stop at the top. This was reported to Mr. Law, the machinist of the defendant.   It was taken apart, and the clutch pin and clutch slide were found to be bruised.   From time to time until the time of the injury, on April 20, 1897, the press would not stop at the top, but, when reaching the highest point, would immediately fall or drop down.   At different times the machine was taken apart, and the clutch pin smoothed off and put back again, and the machine would work properly.   It would sometimes work properly for two months, and again it would drop every few days.   In February, 1897, it dropped down, and the foreman took it apart and examined it.   About two weeks before the injury it dropped again.   Plaintiff knew of the die dropping four times from January 2, 1897, till April 20th; the last time being two weeks before the injury.   Others saw it drop, and on each occasion the attention of Mr. Ross was called to it.   Plaintiff had worked for the defendant from time to time, commencing in 1894.   He worked part of the time on other machines near the machine in question.   On Saturday before the accident he was set to work

on this machine. It worked all right during that day. He was forming stove tops, and, in order to remove them from the lower die, he reached in with a straight piece of iron with one hand to lift up the edge, drawing the top out with the other hand, while the upper die was at its highest point. He testified that this was the way of drawing out the covers, that he never saw it done in any other way, and that "you have got to use your fingers to get them in and out. You tip up the back side so you can draw it out, using your fingers to tip it up and draw it out. The foreman, Ross, showed me how to do it. I am certain Ross used his hand in taking out the work as I did."

Mr. Ross, the foreman, testified that he had charge of the presses, and that it was his duty to inspect them, as he was the superior in command of the press room, and all the men understood it in that way. He further testified that the machine was supposed to stop at the top, and was not all right unless it did, and that it was a part of his duty to make the machine work so that it would stop at the top, if possible; that he took the machine apart a dozen times for the purpose of examining it; took the clutch apart; took the clutch pin out; cleaned them off to see if they were cut, and put the machine together again; that he had the machine apart two or three months before the injury to plaintiff, and that it was all right at that time. It appears that there was no way of ascertaining whether the clutch pin was cut, without taking the machine apart, and that this could be done in 20 minutes or half an hour. The plaintiff testified, further, that on Monday, when he went to work on the machine, he asked Mr. Ross if there was any danger of the machine dropping when it once got up, and he said, "No;" that it did not drop that afternoon; that on Tuesday morning, after Ross oiled the machine, he asked him again if the machine was all right, and he said, "Yes;" that about 20 minutes after that, while he was lifting out a stove top in the usual way, with the iron to hold up the edge, and with his fingers to pull it

out, the top die suddenly dropped, catching his hand, cutting off three fingers and injuring the other; that his foot was not near the treadle at this time; and that he did nothing to cause it to fall. After the accident, the machine was taken apart, and it was found that the clutch pin was cut.

At the conclusion of the testimony, counsel asked the court to direct the verdict for the defendant, for the following reasons:

"*First.* Because it appears by the undisputed evidence in the case that the machine was a good one, and proper and suitable for the purposes for which it was used, and it does not appear that the machine was out of repair at the time of the accident.

"*Second.* Because it does not appear that the machine was improperly adjusted at the time of the accident.

"*Third.* Because it does not appear that the defendant had any knowledge that this machine was out of repair or improperly adjusted, if it was; neither does it appear that there was any negligence on defendant's part in inspecting, or providing for a proper inspection of, the machine.

"*Fourth.* Because it appears beyond dispute that the machine was a proper one, adapted to the purposes for which it was used, and the defendant had provided reasonably for the inspection and repair of the machine.

"*Fifth.* Because it appears from the undisputed evidence in the case that, from the mechanism of the machine, it was as likely the accident occurred by reason of such mechanism in its natural operation as through any want of repair or adjustment, and the verdict of the jury would only be a matter of guesswork.

"*Sixth.* That when he commenced and while operating the machine, up to the time of the injury, the plaintiff had knowledge of the alleged defective operation of such machine, and by continuing the employment he assumed the risk of injury resulting from such defective operation; that he could not relieve himself from the assumption of such risk by showing statements claimed to have been made by the foreman to him before the accident.

"*Seventh.* Because it appears by the undisputed evidence in the case that the plaintiff was guilty of contributory negligence in removing the stove top from the press."

The court refused to give these instructions, but instructed the jury as will be found in the statement.

It is contended by counsel for defendant that negligence cannot be inferred from mere proof of the accident and consequent injury; citing *Toomey* v. *Steel Works*, 89 Mich. 249; *Robinson* v. *Charles Wright & Co.*, 94 Mich. 283; *Perry* v. *Railroad Co.*, 108 Mich. 130; *Shadford* v. *Railway Co.*, 111 Mich. 390. There is no doubt that the rule contended for by defendant's counsel is well settled by the cases cited, but the principle is not applicable to the present case. In the *Perry Case*, as said by counsel for plaintiff, it was held that it did not appear but that the draught rigging might have been broken by the impact of the cars at the time of the coupling. Here the press was continually making trouble, and, when examined, it was found upon two occasions, at least, that the trouble was in the clutch pin. The claim is that it was the cutting of the clutch pin which caused the press to drop, not that it was the dropping of the press that caused the clutch pin to be cut. There was testimony in the case from which the jury might find that the cutting of this pin caused the injury. Mr. Ross, the foreman, testified that the first time the machine ran away he found that the pin was burred up, and on the last occasion he found the same thing, only not so bad; that he thought it was done by grit getting in both times. There was testimony showing that the clutch pin might cut in a short time, or it might take some length of time to cut. It was for the jury to say whether the clutch pin was not gradually cutting, and whether proper inspection would not have prevented the injury. In the case of *Redmond* v. *Lumber Co.*, 96 Mich. 545, it was held that the mere fact that a machine, which was shown to have performed its accustomed work properly both before and after the accident, failed so to work on that particular occasion, was not sufficient to justify the conclusion of negligence. This was but the reiteration of a familiar principle confined to that class of cases, as there was no evidence tending to show that the machinery was out of repair, unless it should be assumed from the alleged fact that it did not stop when the lever was released. It was there said:

"If there were anything to show that the machine had been out of order, and that its working was spasmodic or uncertain, there might be room for the contention that defendant was negligent in not keeping it in repair."

In the present case there was abundance of evidence tending to show that the clutch mechanism was out of repair; that both before and after the injury the press was not in good working order, and that its action was spasmodic and uncertain. The other presses in use were working in good order, but this particular one was constantly giving trouble, and, as some of the witnesses say, "it gave more trouble than all the other presses together."

It is next contended that the court should have directed the verdict for defendant on the ground of contributory negligence on the part of plaintiff. The plaintiff's testimony showed that he was performing the work in accordance with the usual custom, and as he had been instructed by defendant's foreman. That question was fairly submitted to the jury in the general charge.

The question of proper inspection of the machine by the defendant was also properly submitted to the jury. That charge will be found in the statement. It treats this subject very fully and fairly, so that the jury could not have been misled as to the duty which defendant owed to its employés. The defendant's rights were as fully protected as it was entitled to under the circumstances.

It is contended, further, that the court was in error in its charge on the question of plaintiff's release from the assumed risk by what was said to him by the foreman on the Monday and Tuesday prior to the injury. It appears that the clutch mechanism was the source of all the trouble with the machine. That mechanism was wholly concealed within the machine. It could not be seen without taking the machine apart. So far as appears by the record, the plaintiff—an ordinary workman—had not seen this mechanism, and was not familiar with its working. The foreman was an expert, and familiar with the mechanism, and was expressly charged by the defendant with the duty

of inspecting and repairing. Under these circumstances, the plaintiff had the right to rely upon this superior knowledge of the foreman, and it became a question for the jury to determine whether he went to work, and so continued, upon the assurance of Mr. Ross that the press would not drop; that it was all right. The cases holding that the operator assumes the risk of obvious dangers have no application here. It is not negligence for an employé, who is in doubt about the safety of the place where he is sent to work, to defer to the opinions and assurances of those who are supposed to know, and who, from their positions, are bound to have special knowledge as to whether it is safe or not. *Lake Superior Iron Co.* v. *Erickson*, 39 Mich. 492 (33 Am. Rep. 423). This principle is abundantly supported by the authorities. *Chicago Anderson Pressed Brick Co.* v. *Sobkowiak*, 148 Ill. 573; *Burgess* v. *Ore Co.*, 165 Mass. 71; *McKee* v. *Tourtellotte*, 167 Mass. 69; *Northern Pacific R. Co.* v. *Babcock*, 154 U. S. 190; *Haas* v. *Balch*, 6 C. C. A. 201, 56 Fed. 984. In the present case it appears further, from the testimony of the foreman himself, that the plaintiff "would have been warranted in going to work on the machine, supposing it was in repair."

The charge of the court is so full and fair upon all these questions, it becomes unnecessary to discuss them further.

The judgment must be affirmed.

The other Justices concurred.