SIPES *v.* MICHIGAN STARCH CO.

1. MASTER AND SERVANT—NEGLIGENCE—FELLOW-SERVANT.
    A jury have a right to infer that directions, given by one servant to another in the presence of the master, who makes no comment, are approved by him.

2. SAME—NEGLIGENCE—SET SCREWS.
    Failure to cover and properly guard set screws, which the factory inspector has ordered covered, is evidence of negligence. 2 Comp. Laws, § 5349.

3. SAME—ASSUMPTION OF RISK—STATUTORY DUTY.
    As the assumption of risk is the result of a contract of employment, and the employer cannot legally contract to violate a statute, the servant does not assume the risk due to an omission of a statutory duty on the part of the employer.

4. SAME—KNOWLEDGE OF SERVANT.
    It cannot be said, as a matter of law, that a servant should have known of that which could not lawfully exist.

5. PERSONAL INJURIES—CONTRIBUTORY NEGLIGENCE—SET SCREWS.
    Where a servant was injured by an exposed set screw in a revolving shaft, which, according to some of the testimony, he could not have seen in the dim light, and which had been left exposed in violation of a statutory duty, and he had

been directed by a fellow-servant, in the presence of the vice-principal, to stand in a position where his clothes could be caught by the set screw, a refusal to direct a verdict for the defendant on the ground of contributory negligence was proper.[1]

Error to Grand Traverse; Mayne, J. Submitted April 14, 1904. (Docket No. 59.) Decided July 16, 1904.

Case by George H. Sipes against the Michigan Starch Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*W. H. Foster* (*Bowen, Douglas, Whiting & Murfin,* of counsel), for appellant.

*Pratt & Davis* (*Russell C. Ostrander,* of counsel), for appellee.

MONTGOMERY, J. This is an action of trespass on the case, brought by the plaintiff against the Michigan Starch Company, a corporation, to recover damages for personal injury received in defendant's factory on September 25, 1902.

The plaintiff is 52 years of age, and had been 35 years a carpenter and joiner. Some time prior to the time of his injury he was employed by the defendant company as a carpenter, and to do such work as might be required in the repairing of the factory. The defendant's factory is a three-story brick, built with a basement under the entire factory, in which some of the machinery is located. The place where the plaintiff was injured is at the west end of the factory, and about 12 feet from the north wall. It is a corn elevator, used to convey corn from the basement to the third floor of the factory. There is one shaft running north and south and another running east and west. The end of the north and south shaft rested on a pillow-block, or "bridge tree," so called. The east and west

---

[1] For right of servant to recover for injuries caused by projecting screws in shafts and other moving machinery, see note to *Ford* v. *Mt. Tom Sulphite Pulp Co.*, (Mass.) 48 L. R. A. 96.

shaft was about 4 to 4½ feet above the north and south shaft. Where the north and south shaft rested on the pillow-block was a coupling or collar, which was fastened to the shaft with a set screw extending, and just north of this coupling about two feet was the boot into which the shaft ran, which was used for the purpose of carrying the grain from the basement up. On the upper shaft was a pulley and belt. The north and south shaft on which the plaintiff was hurt was about 30 inches from the floor, which would be the distance from the basement floor to the top of the bridge tree. The bridge tree was built of timbers running north and south and east and west. The largest piece is an 8 x 8, 3 feet 2 inches long; the next is a 6 x 6, which is 2 feet 2 inches long; and. the top piece is 1½ x 6, which is about 14 inches long. On the north side of the elevator was a ladder going from the basement floor to the main floor of the building, on which a man could work to adjust the pulley. The north and south shaft, on which the plaintiff was injured, is a slow revolving shaft, making about 30 revolutions per minute. The plaintiff stood upon the top of the bridge tree with the shaft revolving between his feet from east to west. He was facing the north, working at a pulley that was about four feet up from the bridge tree on which the plaintiff was standing, and was right abreast of him. The set screw caught him on the inside of the bottom of his overalls and twisted and injured him. He got upon the bridge tree and took the position that Mr. Parish had occupied. He saw the shaft revolving, but observed nothing else. The set screw extended about three-fourths of an inch. He saw the shaft revolving, and supposed that he was far enough away from it. He did not look to see if his clothes were coming in contact with the revolving shaft. He did not make any examination whatever to see if there were any danger by occupying the position upon the bridge tree. Electric lights had been put in the plant for use when necessary, but while the plant was undergoing repairs workmen with the plaintiff tore out the electric wires. The set screws in the

factory were ordered covered by the deputy factory in-
spector, William Mummery, on the 11th day of July, 1902.
Notice was given to Mr. Bauer, president of the company,
who ordered the set screws throughout the factory covered.
There was testimony that the set screws in the factory and
the one in question were covered immediately after the
notice was given, but the cover had been knocked off this
one.    Plaintiff offered some testimony tending to show
that the set screws were never covered.    The plaintiff re-
covered, and the defendant brings error.

The points relied upon are that the plaintiff assumed
the risk; that, in any view, he was guilty of contributory
negligence; and in this connection that the negligence of
Parish in directing plaintiff to stand upon the bridge to
perform his work was the negligence of a fellow-servant.
The last suggestion was embodied in defendant's fourth re-
quest, in which the court was asked to charge that Parish
was a fellow-servant, and concluded with a request for a
directed verdict.    The instruction asked was faulty in ig-
noring the fact that Falkner, who was apparently the alter
ego of the defendant, was present when the direction of
Mr. Parish was given, and made no comment.    From
this the jury would have the right to infer that the method
of doing this work resorted to by Parish and the plaintiff
was not disapproved by the management.

The negligence of defendant, if any, consisted in leav-
ing the set scew uncovered.    Defendant's counsel cite
cases to sustain their contention that it is not negligence
to leave a set screw exposed and to omit to warn an em-
ployé of its presence.    There are numerous cases in which
set screws are referred to as in common use, and in which
it is held that their presence cannot be made the basis of
an action of negligence; and, if it were not for our statute,
and the action shown to have been taken under it, these
cases might be deemed controlling.    But the legislature
of this State, in recognition of the danger to employés and
others from exposed set screws, has enacted that set
screws shall be properly guarded when deemed necessary

by the factory inspector. 2 Comp. Laws, § 5349. In the case of defendant's factory this had been deemed necessary, and the set screws ordered covered. The testimony is conflicting as to whether the one in question had ever been covered, but, if it had been, the covering had not been kept in place, but it had been exposed for considerable time before the injury to plaintiff. It will hardly do to say that the neglect of a statutory duty imposed for the protection of workmen is no evidence of negligence. See *Marino* v. *Lehmaier*, 173 N. Y. 530 (66 N. E. 572, 61 L. R. A. 811).

Did the plaintiff assume the risk? In the well-considered case of *Narramore* v. *Railway Co.*, 37 C. C. A. 500, 96 Fed. 298 (48 L. R. A. 68), Judge Taft deals with the question of the assumption by a servant of the risk resulting from a neglect of a statutory duty by the master in his accustomed thorough and exhaustive manner. The conclusion reached (and which we approve) is that, as the assumption of risk is the result of a contract of employment, and as the master could not legally contract to violate a statute, he is not in a position to assert, as against the servant, the doctrine of assumption of risk, even in case the omission of such statutory duty on his part is known to the servant. Whatever effect knowledge possessed by the servant of a breach of statutory duty may have upon the question of contributory negligence, it seems that upon reason and authority it cannot result from such knowledge that he assumed the resulting risk. In the present case it does not appear that the plaintiff had knowledge of the neglect of duty on the part of the defendant. He testifies that at this day the usual way of protecting set screws is to countersink them, so that it appears that he did not know of any projecting set screws; nor could it be said as matter of law that he should have known of what could not lawfully exist. See *Jones* v. *Railroad Co.*, 127 Mich. 198 (86 N. W. 838).

Was he, then, guilty of contributory negligence in taking the position he did upon this bridge tree? If the in-

jury had resulted from a danger which was open to view, and which he was bound to look out for, there would be no difficulty in saying that he was guilty of negligence as matter of law; but the only danger which he in fact saw was the revolving shaft. There was testimony from which the jury might have found that in the dim light he could not have seen the set screw. He followed Parish to this position. The alter ego of his employer stood by and witnessed his direction to take the position which he took. And while neither fact may be conclusive in his favor, these circumstances may be legitimately considered in determining the question whether he acted as a man of ordinary prudence would under such circumstances. *Lake Superior Iron Co.* v. *Erickson*, 39 Mich. 492–500 (33 Am. Rep. 423); *Burnside* v. *Manufacturing Co.*, 121 Mich. 115 (79 N. W. 1108). We think the question was one for the jury.

The other questions discussed have been considered, but do not call for further discussion. No error is found.

The judgment will be affirmed.

MOORE, C. J., CARPENTER and HOOKER, JJ., concurred. GRANT, J., did not sit.