Appeal from Third District.

## OCKEY v. BINGHAM-NEW HAVEN COPPER & GOLD MINING CO.

No. 2561.   Decided January 3, 1916.   (154 Pac. 586.)

1. MASTER AND SERVANT—PROTRUDING SET SCREW—INJURY TO EM-PLOYEE—CONTRIBUTORY NEGLIGENCE. Plaintiff, as shift boss in defendant's mill, directed the work during the shifts in which he was on duty. The motor operating the line shaft having stopped, plaintiff, after starting the machinery, attempted to re-place a belt on a line shaft pulley, and while so engaged was caught by a projecting set screw. All the other set screws were countersunk, and plaintiff did not know that the screw in question protruded, nor could he see it while the machinery was in motion. *Held*, that plaintiff was not guilty of contributory negligence in law in attempting to replace the belt.   (Page 317.)

2. MASTER AND SERVANT—UNGUARDED SET SCREWS—NEGLIGENCE—QUESTION FOR JURY. The question whether or not an employer is negligent in operating machinery with unguarded or pro-jecting set screws is ordinarily for the jury.   (Page 319.)

3. MASTER AND SERVANT—INJURY TO EMPLOYEE—PROTRUDING SET SCREW—ASSUMED RISK. Plaintiff, who was a shift boss in con-trol of defendant company's mill, working in every part of it, and who had helped remodel the mill, when he had adjusted many set screws in the machinery, was injured while attempt-ing to replace a belt on a line shaft pulley by being caught by a projecting set screw on a bearing collar. He did not know that such screw projected, and all the other screws of the shaft were countersunk, which he knew. While the shaft was in motion, it was impossible to see the set screw in ques-tion, and it did not appear that plaintiff's duties included inspection of the machinery. *Held*, that plaintiff did not assume risk of injury from such set screw as an ordinary risk of employment or one readily discernible by the exercise of ordi-nary care.   (Page 320.)

Appeal from District Court, Third District; *Hon. C. W. Morse*, Judge.

Action by Ross Ockey against the Bingham-New Haven Copper & Gold Mining Company, a corporation.

Judgment for defendant.   Plaintiff appeals.

REVERSED.

*Willard Hanson* and *Marioneaux, McKinney & Powers* for appellant.

*King & Nibley* for respondent.

## STATEMENT OF FACTS.

This is an action for personal injuries. · It is alleged in the complaint that plaintiff was, on the 2nd day of November, 1911, at work for the defendant, a corporation, in its concentrating mill at Bingham Canyon, Utah; that it was a part of his employment to adjust belts on certain pulleys and to replace the belts thereon when they, by reason of the movements of the pulleys, or other causes, slipped or came off; that the pulleys were secured and adjusted on a certain line shaft in the mill, at the end of which were two collars, one on each side of the end bearing; that the collars were fastened to the shaft by means of set screws; and that these set screws, when properly made, would fit into the collar, and the heads thereof would not project beyond the collar. It is further alleged that it was the duty of defendant to use set screws that would properly fit into the collars and that would not project beyond the surface thereof; that defendant carelessly and negligently used a set screw in one of the pulleys the head of which projected above and beyond the collar a distance of about one inch, and that it was unknown to plaintiff, who believed that the set screw was properly made and that it properly fitted into the collar on the line shaft; that plaintiff, while in the exercise of due care and in the performance of his duties adjusting the belt on a pulley, had the leg of his trousers caught by the set screw by reason of its projecting above and beyond the collar of the shaft, and he was thrown against the timbers of the mill and violently against the pulley and shaft; · that he received certain injuries (describing them) ; that plaintiff prior to and at the time he was injured was strong and able-bodied, and was capable of earning, and did earn, $3.50 per day.

Defendant answered, admitting that plaintiff was on No-

vember 2, 1911, employed by defendant, that plaintiff received "slight injuries" while at work for defendant in its mill, and that he was earning $3.50 per day, but denied each and every allegation alleging negligence on the part of defendant. Defendant also pleaded the defense of contributory negligence and that of assumed risk. Defendant, at the conclusion of plaintiff's evidence, moved the court for non-suit on the following grounds: (1) That the evidence failed to show negligence on the part of defendant; (2) that the evidence showed that plaintiff was guilty of contributory negligence; and (3) that he assumed the risks of the hazards as dangers under which he was injured.

The motion for non-suit was granted, and judgment entered in favor of the defendant. Plaintiff appeals.

McCARTY, J. (after stating the facts as above).

The mill in which appellant received the injuries complained of was several stories in height. The concentrating tables were on the main floor, and the jigs were located on the floor above. Between the main floor and the jig floor was a platform or subfloor upon which were a pump and an electric motor. A line shaft extended along the subfloor practically the entire length of the building. This line shaft was fastened by bearings to the pillars or upright timbers that supported the sub or jig floor. The concentrating tables were operated by power transmitted from the motor on the subfloor to the tables by means of belts connected with and extending from the pulleys on the tables to the pulleys on the line shaft. On each side of the bearings and on each side of the pulleys on the line shaft were collars called safety collars. These collars were to prevent the line shaft from moving out of the bearings and the pulleys from slipping laterally along the shaft, and were held in place by means of set screws which were countersunk in the collars. The evidence shows that all set screws in the mill except the one mentioned in the complaint were set in safety collars; that is, collars in which the head of the set screw can be countersunk so as not to project beyond the collar. The line shaft was connected to the electric motor referred to herein, which mo-

tor could be stopped, and started by means of a switch, and also a clutch on the shaft. The usual manner of starting the shaft in motion was to turn the current through the motor and then throw the clutch, which permitted the power to be applied on the shaft. The shaft could be stopped either by throwing the clutch or stopping the motor.

Appellant was employed as jigman, and also as a shift boss. He was during the shifts on which he worked in control of the operations of the mill and directed the men working therein as to their duties. A Mr. Bouchelle was foreman at the mill, and gave orders to the different bosses, including appellant. The foreman was on shift during the daytime, but not in the nighttime. He was not in the mill at the time of the accident, which occurred at night. During the day shift there was a "repair man" in the mill whose duty it was to keep all of the machinery in repair. The repair man worked in the mill under the directions of the mill foreman. The day before the accident a Mr. Pressler, while at work in the mill, was caught by the set screw that injured plaintiff. On the night in question, and a short time before the accident occurred, owing to some trouble with the machinery on one of the lower floors, the motor stopped, which caused the line shaft to cease revolving, thereby stopping the movement of the tables. Appellant left the jig floor and went down to the floor where the trouble existed to ascertain if he could remedy it. He assisted the man there to adjust the machinery and to start it in operation. As he was returning to the jig floor he observed that the belt was off the pulley at the first or end table. He requested one of the men at work in the mill to assist him in replacing the belt onto the pulley. To do this appellant had to return to the jig floor, and from there crawl underneath some of the timbers along the subfloor where the line shaft was located. He proceeded to the point where the line shaft fitted into the bearing, and straddled the bearing on the timber, and commenced to put the belt onto the pulley by using a stick—a usual method there of putting on a belt. As he was thus engaged the set screw herein referred to, that projected above the collar, caught his clothing and threw him against the shaft. Appellant being unable to disengage his clothing from the set screw,

it cut and tore the muscles of his leg. The extent of the in-
jury is not in controversy, and hence we shall not review the
evidence relating thereto. When he was caught by the set
screw appellant called for help. Other workmen, hearing the
call, threw the motor off and came to his assistance. The line
shaft, when the mill was in operation, made 240 revolutions
per minute, and when so revolving, the set screws in the safety
collars could not be seen. As stated, the day before appellant
came in contact with the set screw on the occasion referred to
a Mr. Pressler, who was working in the mill, had his clothing
torn and ripped by coming in contact with the set screw that
injured appellant. Appellant testified that he did not know,
prior to the accident in which he received the injuries com-
plained of that the set screw in question extended above and
beyond the•safety collar. And there is no evidence from
which it may be inferred that appellant had any knowledge
of the condition of the set screw until after the accident.

The undisputed evidence precludes us from holding that
respondent was, as a matter of law, free from negligence. The
only inference permissible from the record as it now stands is
that the set screws in the mill, excepting the screw in ques-
tion, were countersunk so that the tops or heads thereof were
"flush" or even with the outside rim of the collars into which
they were placed. The evidence shows that the head of the
set screw projected above the rim of the collar from one-half
to three-fourths of an inch, and could not be seen when the
shaft was revolving.

Some authorities hold that, as a legal proposition, it is not
negligence for a master to maintain and operate ma-
chinery in which are revolving shafts with collars held         2
in place by set screws that project above and beyond
the outside rim of the collars. The weight of authority, how-
ever, and, we think, the better reasoning, support the doctrine
that ordinarily it is for the jury to decide whether it is negli-
gence for the master to operate machinery in which are re-
volving shafts, couplings, and like contrivances held in place
by unguarded protruding set screws. 4 Thomp. Neg. Sections
4022, 4124; 1 Bailey, Per's. Inj. p. 430; *Pruke* v. *S. P. Found.
& Mach. Co.*, 68 Minn. 305, 71 N. W. 276; *Bush* v. *Ind. Mill*

*Co.,* 54 Wash. 212, 103 Pac. 45; *Barr* v. *Guelph Patent Case Co.,* 129 Mich. 278, 88 N. W. 640; *Guinard* v. *Knapp-Stout & Co.,* 90 Wis. 123, 62 N. W. 625, 48 Am. St. Rep. 901; *Roth* v. *Northern Pac. Lumbering Co.,* 18 Ore. 205, 22 Pac. 842; *Portland Gold Min. Co.* v. *O'Hara,* 45 Colo. 416, 101 Pac. 773; *Chopin* v. *Combined Locks Paper Co.,* 134 Wis. 35, 114 N. W. 95. See *Sipes* v. *Michigan Starch Co.,* 137 Mich. 258, 100 N. W. 447; *Homestake Min. Co.* v. *Fullerton,* 69 Fed. 923, 16 C. C. A. 545. Nor do we think that appellant, under the facts and circumstances, was as a matter of law, guilty of contributory negligence.

Counsel for respondent contend with much earnestness that, as appellant was shift boss and in control of the mill, and was familiar with the machinery, he assumed the risk and hazards created by the projecting set screw in question. As the record now stands, it shows that, while appellant assisted in remodeling the mill, and had "worked in every part of it" and had inserted set screws into the collars "hundreds of times" he "never saw them stick out beyond the collar"; that they were "always flush with the collar [and] never projected out from the collar at all;" he did not know that the head of the set screw in question projected above and beyond the rim of the collar. Furthermore the evidence shows that it was the duty of appellant, while he was on shift, to keep the mill in operation except when it needed repairing or when the supply of ore ran short. It was not shown, nor is it suggested, that it was his duty, or that he would have been permitted, to close down the mill each time he went on shift to make a tour of inspection of the machinery, including the bolts and set screws, to see if the mill was in proper condition. And the evidence shows that the set screws that hold the collars on the shafts in place are invisible when the mill is in operation and the shafts are revolving. From the facts as they now appear it may well be inferred that the set screw which caused the injury complained of was placed in the collar by the repair man or some other employee after appellant assisted in remodeling the mill, and that respondent knew, or should have known, that it was inserted in such a way as to be a constant menace to the safety of the employees who, in

the discharge of their duties, were compelled to pass, or occasionally stand, in close proximity to it. We know of no rule or principle of law which holds that, under these circumstances the servant assumes the extra risks and hazards produced by an unsafe appliance. The rule is elementary that it is the duty of the master to use due care to furnish the servant reasonably safe appliances with which to perform the work required of him under the contract of employment, and that the servant assumes the ordinary risks of the employment and those that are, by the exercise of ordinary care, readily discernible. 1 Shearman & Redfield, Neg., Sections 185, 189. *Texas & Pacific Railway* v. *Archibald,* 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188, is a well-considered case, and the court, in the course of the opinion, says:

"In assuming the risks of the particular service in which he engages the employee may legally assume that the employer, by whatever rule he elects to conduct his business, will fulfill his legal duty by making reasonable efforts to furnish appliances reasonably safe for the purposes for which they are intended; and, whilst this does not justify an employee in using an appliance which he knows to be defective, or relieve him from observing patent defects therein, it obviously does not compel him to know or investigate the employer's modes of business, under the penalty, if he does not do so, of taking the risk of the employer's fault in furnishing him unsafe appliances."

The rule is also clearly, and, as we think, correctly, stated in *Davidson* v. *Cornell,* 132 N. Y. 228, 30 N. E. 573, as follows:

"It is, as a general rule, true that a servant entering into employment which is hazardous assumes the usual risks of the service and those which are apparent to ordinary observation, and, when he accepts or continues in the service with knowledge of the character of structures from which injury may be apprehended, he also assumes the hazards incident to the situation. *Gibson* v. *Erie Ry. Co.,* 63 N. Y. 449 (20 Am. Rep. 552); *De Forest* v. *Jewett,* 88 N. Y. 264; *Sweeney* v. *Berlin & Jones Envelope Co.,* 101 N. Y. 520 (5 N. E. 358, 54 Am. Rep. 722; *Hickey* v. *Taaffe,* 105 N. Y. 26, 12 N. E. 286; *Williams* v. *Delaware, Lackawanna, etc., Railroad,* 116 N. Y. 628 (22 N. E. 1117). Those not obvious assumed by the employee are such perils as exist after the master has used due care and precaution to guard the former against danger. And the defective condition of structures and appliances which by the exercise of reasonable care of the master may be obviated, and from the consequences of

322          SUPREME COURT OF UTAH.          [Jan.

Ockey v. Bingham-New Haven Copper & Gold Min. Co., 47 Utah 315.

which he is relieved from responsibility to the servant by reason of the latter's knowledge of the situation, is such as is apparent to his observation. *Kain v. Smith*, 89 N. Y. 375; *McGovern v. Central Vermont Railroad*, 123 N. Y. 280 (25 N. E. 373)."

The judgment is reversed, with directions to the lower court to grant a new trial; costs to appellant.

FRICK, J.

I concur. The only question upon which I entertain some doubt is the one respecting the relationship of the plaintiff and the defendant and their correlative duties growing out of that relationship. If the duty was cast upon the plaintiff to discover any defects in the machinery or appliances and to correct or report them when discovered, he, of course, would be precluded from complaining of a defect he himself should have discovered and corrected. To my mind, however, the evidence as it stands is not of that character which would authorize a court to determine the relationship of the parties and their correlative duties as matter of law. The court should therefore have submitted to the jury the evidence respecting plaintiff's duties, and should have directed them to find from the evidence what his duties were, and, if they found that it was his duty to discover and correct defects, or to discover and report them, then that he could not recover, but that, if they found that he was not charged with that duty, but was merely charged with the duties of an ordinary employee, then to be governed by the law as it is stated in the opinion of my Associate.

STRAUP, C. J.

There is considerable evidence to show that the plaintiff was a vice-principal, and as such was, with others, charged with duties of inspection and to remedy or repair just such defects as he complains caused the injury. I am, however, not satisfied that the evidence on that point is so conclusive as to justify a withholding of it from the jury. I therefore concur.