(78 Misc. Rep. 546.)

LEDDY v. CARLEY.

(Supreme Court, Trial Term, Kings County. December 21, 1912.)

1. TRIAL (§ 165*)—MOTION FOR NONSUIT—EVIDENCE—CONSIDERATION.
    The court, on motion for nonsuit at the close of plaintiff's case, must give to plaintiff the most favorable inferences which the facts proved, assumed to be true, will justify.

    [Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 373, 374; Dec. Dig. § 165.*]

2. MASTER AND SERVANT (§ 103*)—INJURY TO SERVANT—OBLIGATION OF MASTER—SAFE PLACE TO WORK.
    Where an employé prepares his own place in which to do his work, the employer is not liable for injuries resulting from the dangerous character of the place, because he is under no duty to provide the employé with a safe place.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 175; Dec. Dig. § 103.*]

3. MASTER AND SERVANT (§ 196*)—INJURY TO SERVANT—OBLIGATION OF MASTER—SAFE PLACE TO WORK.
    Where a place in which an employé is to work is prepared by a fellow employé, and the progress of the work creates a danger, and the employés are engaged in the prosecution of the same enterprise, the employer is not liable for injuries to the employé resulting from the dangerous character of the place, because the employer is under no duty to use reasonable care to provide a safe place.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 375–378, 486–488; Dec. Dig. § 196.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 53 Hun, 637.

4. MASTER AND SERVANT (§ 199\*)—FELLOW SERVANTS—WHO ARE.

· One set of employés preparing and and finishing a trench for the laying of sewer pipe are not fellow servants of employés sent into the trench to lay the pipe.

[Ed. Note.—For other cases, see Master and Servant; Cent. Dig. § 491; Dec. Dig. § 199.\*]

5. MASTER AND SERVANT (§ 118\*)—INJURY TO SERVANT—NEGLIGENCE—SAFE PLACE TO WORK.

Where an employé to dig a sewer trench and lay the pipe completed the trench and then asked the employer to have it shored up, but the employer, with knowledge of the conditions from personal observation and from the employé's statements, refused to grant the request, and directed the employé to lay the pipe, without having the trench shored up, the rule that an employer must use reasonable care to provide a safe place in which to work applied, and he was liable for the death of the employé caused by the caving in of the trench while laying the pipe, provided the employé ·did not assume the risk and was not guilty of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 177, 202, 209; Dec. Dig. § 118.\*]

6. MASTER AND SERVANT (§ 217\*)—INJURY TO SERVANT—ASSUMPTION OF RISK.

An employé who continues his work with knowledge of a danger assumes the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.\*]

7. MASTER AND SERVANT (§ 265\*)—INJURY TO SERVANT—ASSUMPTION OF RISK—BURDEN OF PROOF.

The burden of proving that an employé assumed a risk is on the employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.\*]

8. MASTER AND SERVANT (§ 280\*)—INJURY TO SERVANT—ASSURANCE OF SAFETY BY MASTER—EVIDENCE.

In an action for the death of an employé digging a sewer trench and laying pipe, caused by the caving in of the trench while laying pipe, evidence *held* to justify a finding that the employer ordered the employé to lay the pipe without shoring the trench and assured him that it was safe to do so.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 981–986; Dec. Dig. § 280.\*]

9. MASTER AND SERVANT (§ 220\*)—INJURY TO SERVANT—ASSURANCES OF SAFETY BY MASTER—EFFECT.

Where an employé has equal knowledge of a danger with the employer, the latter's assurance of safety will not relieve the employé of the assumption of risk; but, where the employer has superior knowledge on which the employé is entitled to rely, an assurance of safety may justify the employé in undertaking the work without assuming the risk, unless the danger is so imminent as to prevent a reasonably prudent man from risking it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 625–637, 641, 644–647; Dec. Dig. § 220.\*]

10. MASTER AND SERVANT (§ 288\*)—INJURY TO SERVANT—ASSUMPTION OF RISK—QUESTION FOR JURY.

Where an employé engaged in laying a sewer was assured by his employer, who was presented and directed the work, that it was unnecessary to shore up the trench because the work of laying the pipe would take

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

only a short time, the employé, relying on the assurance, did not assume as a matter of law, the risk of the trench caving in.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

11. MASTER AND SERVANT (§ 289*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

The employé relying on the assurance was not guilty as a matter of law of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

12. MASTER AND SERVANT (§ 220*)—INJURY TO SERVANT—ASSUMPTION OF RISK.

The courts should confine the doctrine of assumption of risk of obvious dangers within as narrow limits as possible without resorting to judicial legislation, and an employé will not be deemed to have waived the performance by the employer of a common-law duty, merely because he has some knowledge of the danger, where he has received the assurance of the employer that the place is safe, unless his knowledge and appreciation of the danger are equal to that of the employer.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 625–637, 641, 644–647; Dec. Dig. § 220.*]

Action by Bridget Leddy, as administratrix of James Leddy, deceased, against Edward Carley. On motion by plaintiff for a new trial on the minutes, after a dismissal of the complaint at the close of plaintiff's evidence. Granted.

James P. Kohler, of Brooklyn, for plaintiff.
Elliot, Jones & Fanning, of Brooklyn, for defendant.

BENEDICT, J. This action is a common-law action for negligence claimed to have resulted in the death of plaintiff's intestate, who was in the employ of the defendant at the time of the accident which caused his death. The proof was, in substance, that plaintiff's intestate, James Leddy, was employed by defendant, who was in the plumbing business in the borough of Brooklyn, and that, on July 6, 1911, James Leddy was engaged in the course of his employment in laying a connecting drain from the sewer in Milton street to a dwelling. James Leddy's son, John M. Leddy, was assisting him. They made the excavation, a trench about 12 feet deep at its greatest depth, and from 1 to 2 feet wide at top and bottom. The character of the soil was, generally speaking, a friable sandy soil with some loose stones in it. In addition to digging this trench up to the sidewalk, they tunneled part way under the sidewalk. While working in this part of the excavation, the earth caved in, and a boulder struck James Leddy, who then was lying prone at the bottom of the trench, and that blow or suffocation from the smothering sand, or both combined, had caused his death by the time his body was taken out.

The excavation had been finished about 12 o'clock, and the accident occurred after James Leddy and his son had returned from dinner, and while they were engaged in putting in the pipe. There was evidence that when the work of excavation was finished, or nearly finished, James Leddy had told Carley that the trench ought to be shored up, that the bank was caving in and falling on him, that Carley replied that

it was not necessary, that there were only a couple of lengths of pipe to be put in, and that then they would fill it up. There was also evidence that Carley had planks at his shop, which was near by, suitable for shoring, and that during a part of the time, at least, while the excavation was being made, Carley was present superintending, or, at any rate, supervising the work, and that he was present at the time of the accident. James Leddy was 57 years of age and was an experienced man in that sort of work. At the close of plaintiff's evidence defendant's motion for a nonsuit was granted.

[1] Under well-established rules the plaintiff was entitled to the most favorable inferences in support of his cause of action which the facts proved, if assumed to be true, would justify.

[2-4] The decedent himself prepared the trench, and hence there could be no recovery but for the fact that he complained to the defendant of the danger of a cave-in, and requested that the trench be shored up, which request defendant refused, assuring decedent that it was not necessary. The general rule is that, where the servant prepares his own place in which to do his work, the master is not liable for any injuries resulting from the dangerous character of such place, or, in other words, that the rule requiring the master to use reasonable care to provide his servant with a safe place in which to work does not apply in such cases, and a similar rule applies where the place is prepared by the fellow servants of the injured employé, if the progress of the work itself creates the danger, and all are engaged in the prosecution of the same enterprise. Citrone v. O'Rourke Engineering Const. Co., 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A. (N. S.) 340; Mullin v. Genesee El. L. P. & G. Co., 202 N. Y. 275, 95 N. E. 689. Where, however, one set of servants prepares and finishes a trench for the laying of pipe, they are not fellow servants of those afterward sent into the trench to lay the pipe. Kranz v. Long Island Ry. Co., 123 N. Y. 1, 25 N. E. 206, 20 Am. St. Rep. 716; Schmit v. Gillen, 41 App. Div. 302, 58 N. Y. Supp. 458.

[5] That the decedent in the case at bar, when the trench was complete or substantially complete, asked the defendant to have it shored up, and that the defendant knowing the condition of the trench, both from decedent's statement and from having been personally present, refused to grant this request and in substance directed decedent to lay the pipe therein without having it shored up—these facts, in my opinion, serve to take this case out of the rule announced in the Citrone and Mullin Cases, supra, and to leave the way open for the application of the rule that the master must use reasonable care to provide his servant with a safe place in which to work. These facts placed the master in practically the same position as if the decedent had had nothing to do with preparing the trench, and so bring the case within the doctrine of Kranz v. Long Island Ry. Co., supra, and Schmit v. Gillen, supra. See, also, Stuber v. McEntee, 142 N. Y. 200, 36 N. E. 878.

[6, 7] It still remains, however, to consider the question whether the decedent assumed the risk of injury, or was guilty of contributory negligence, because he knew of the danger. The only evidence introduced by the plaintiff to take the case out of the doctrine of the many

authorities holding that an employé, who continues his work with knowledge of the danger, assumes the risk or is guilty of contributory negligence, was the interview between the decedent and defendant already referred to. But so far as the question of assumption of risk is concerned it must be remembered that the burden of proof was on the defendant (Dowd v. N. Y. O. & W. R. Co., 170 N. Y. 459, 63 N. E. 541; Jenks v. Thompson, 179 N. Y. 20, 71 N. E. 266), and this case I regard as a case involving the question of assumption of risk rather than the question of contributory negligence, although some of the cases to which I shall refer use the latter term apparently interchangeably with assumption of risk.

[8] The witness John M. Leddy testified as follows:

"He (decedent) told Carley that the bank was caving in and was falling in on him; and then he asked Carley was he going to shore up the bank, and Carley answered—that is all he said. And Carley answered him back that it was not necessary, 'You only got a couple more lengths of pipe to put in, and then we will fill it in.' "

The witness Gleason also testified to the same conversation, as follows:

"I heard Leddy say to Carley: 'Boss, do you think it will be all right to shore that up?' And he says: 'Go ahead, Jimmy, I don't think it will be necessary. There is only a couple of lengths to go in.'

"Q. Say that again so the jury can hear you. A. He says, 'Do you think it will be all right to shore this up?' And he says, Carley says: 'No, I don't think it will be necessary. We only got a couple of lengths to go in, and then we will fill in.' "

This testimony would, I think, have justified the jury in inferring that the defendant ordered James Leddy to work in the trench as it was, and assured him that it was safe to do so; that is, the jury might have inferred that the decedent so understood the defendant, and was justified in so doing. We are then brought to a consideration of the question whether an assurance of safety by the master under the circumstances of this case would relieve the employé of assumption of risk, or make that question a question for the jury rather than for the court.

[9] While the authorities are not wholly harmonious on this question, they support in general the conclusions ably stated by Shiras, J., in Haas v. Balch, 56 Fed. 984, 6 C. C. A. 201, where, after observing that "the fact that the assurance of safety has been given is one to be weighed in each case," continued as follows:

"If, in a given instance, the servant, being of mature age and of ordinary intelligence, has equal knowledge with the master of the dangers to be apprehended, and he voluntarily subjects himself thereto, knowing of their existence, the mere fact that he had received an assurance that there was no risk to be dreaded or avoided might be of little avail in relieving him from the charge of contributory negligence. On the other hand, if the master or his representative has superior knowledge or means of knowledge of a given situation and of its safety or the contrary, and he assures the servant that he can safely undertake a given work, such an assurance may justify the servant in undertaking the work in reliance upon the superior knowledge of the master, and without being liable to the charge of negligence in so doing, unless the danger, in the language of the Supreme Court in District of Colum-

bia v. McElligott, 117 U. S. 621, 633 [6 Sup. Ct. 884, 29 L. Ed. 946], is 'so imminent or manifest as to prevent a reasonably prudent man from risking it.' "

In that case plaintiff was one of a gang of men engaged in grading down a street; it being his duty to shovel dirt in cars. In so doing, he was required to go underneath an overhanging bank. He inquired of the foreman if it was safe to work there, and the foreman assured him that it was. Plaintiff was injured by the falling of the bank, and it was held that it was for the jury to say whether plaintiff had assumed the risk; for the foreman had superior knowledge, on which plaintiff was entitled to rely. This decision is in line with authorities in many states. L. & H. R. Co. v. Handley (Ala.) 56 South. 539; Walter v. Fisher, 96 Ill. App. 590; Chicago, etc., Coal Co. v. Moran, 110 Ill. App. 664, affirmed 210 Ill. 9, 13–14, 71 N. E. 38; Keen's Adm'r v. Keystone Crescent Lumber Co. (Ky.) 118 S. W. 355, 356; Haley v. Case, 142 Mass. 316, 7 N. E. 877; McKee v. Tourtellotte, 167 Mass. 69, 44 N. E. 1071, 48 L. R. A. 542; Sanders v. N. Y. Central & H. R. R. Co. (Mass.) 98 N. E. 927; Burnside v. Novelty Mfg. Co., 121 Mich. 115, 79 N. W. 1108; Duerst v. St. Louis Stamping Co., 163 Mo. 607, 614, 621–622, 63 S. W. 827; Burkard v. Leschen & Sons Rope Co., 217 Mo. 466; 117 S. W. 35.

On the other hand, where the servant has equal knowledge of the danger with the master, the latter's assurance of safety will not relieve the servant of the assumption of risk. Kenney v. Bingham Cordage Co., 168 Mass. 278, 47 N. E. 117; Toomey v. Eureka Iron & Steel Works, 89 Mich. 249, 50 N. W. 850; Rohrabacher v. Woodward, 124 Mich. 125, 82 N. W. 797.

In New York the authorities seem to be in accord with the doctrine stated in Haas v. Balch, supra. Thus in Hawley v. Northern Central Railway Co., 82 N. Y. 370, it was held that a locomotive engineer was not chargeable with contributory negligence as matter of law because he knew that the road was in a defective condition, when he had been ordered by the defendant to run his engine over it as he did. The court said:

"We must take into account the plaintiff's position. His business was that of an engineer, and unless he obeyed orders and ran his engine he would have been obliged to abandon defendant's service. Of one thus situated the law should not be too exacting. We must assume that the officers of defendant, who had charge of the road, and must have known its condition, deemed it safe; and the plaintiff had the right to rely somewhat upon their judgment. Other employés of the road, and hundreds of passengers, were daily trusting their lives upon the road, and on the day of the accident he was ordered to and did precede a passenger train. Under such circumstances, was the plaintiff bound to set up his judgment against that of all others and determine for himself that the road was absolutely unsafe for the passage of his engine, and abandon his position as engineer, or take upon himself the risk caused by defendant's negligence?"

In Daley v. Schaaf, 28 Hun, 314, it appeared that plaintiff's intestate was engaged with others in carrying bricks from the street to an elevator used to convey them to the upper floors of a building under construction. The elevator was a primitive affair, and bricks had fallen

from above in the course of removing them from the elevator. Two of the men afterward attempted to put up some planks to shield the men below, but were stopped by one of the defendants, who made them take down the planks already placed in position, saying that they did not need it, that it was all secure above, and there was no danger. It was held that the question of contributory negligence was properly submitted to the jury. The court, among other things, said:

"Whatever may be the rules of law governing the relations of master and servant, strictly construed with reference to the adjudged cases, none of them have gone so far as to hold the master free from responsibility where the work undertaken is apparently dangerous, but as to which he gives assurances to his workmen that there is no danger. Under such circumstances he assumes the risk, and not the workmen. *If that is not the law, it ought to be.*" (Italics are mine.)

The court further remarked:

"It would be very extraordinary for the courts to declare, after an assurance given to an employé by the employer like that which was given to the deceased, that he should be held unaccountable if there was in fact danger and an injury was sustained in consequence without fault on the part of the employé. If there had been no such declaration made, the rule to be applied to the facts might be very different. When there is apparent danger in the calling or employment, and notwithstanding the exhibition of it by the facts and circumstances the employer assures the employé that there is no danger, and an injury results, the most liberal rule that the employer can expect is to have the question of contributory negligence submitted to the jury."

To these views I unhesitatingly subscribe.

In Doyle v. Baird, 6 N. Y. Supp. 517, the plaintiff was injured by the caving in of the sides of a trench in made ground, in which he had been ordered to work by the defendant's foreman. The court held that it was error to dismiss the complaint, saying on the question of contributory negligence:

"Nor do we think contributory negligence is to be imputed to the appellant because he obeyed the foreman's command, and went to work at the bottom of the trench, although he had the same opportunity for observing any apparent insecurity which said foreman, or even the master, had. * * * Whether the banks of a deep trench will or will not cave in involves a question in civil engineering. A workman of ordinary intelligence cannot be required at his peril to solve a problem fitted only for specially educated experts."

In Chadwick v. Brewsher, 15 N. Y. Supp. 598, the plaintiff, a journeyman house painter, was injured because of the fall of a painter's scaffold which was suspended from planks laid on the roof and projecting over. On the first day the plaintiff had fastened the planks at the inner end by tying them; but his employer, the defendant, said it was not necessary, that they would hold without tying all that could be placed on the scaffold. Subsequently the defendant moved the scaffold to other places without tying or otherwise securing the inner ends of the planks. Plaintiff knew of this condition. The cause of the falling of the scaffold was the failure to secure the planks. It was held that plaintiff did not assume the risk. The court said:

"Here we may assume that the plaintiff knew as much about how the planks were placed as his master did, but that he did not know as well as

his master did the danger which was latent in such an adjustment of them. It is one thing to know the visible conditions, and may be quite another to know what they indicate. In the present case the master assumed to know, and by virtue of his assumed superiority of knowledge he dispelled his servant's apprehension."

In this case it appeared that the plaintiff had been a painter for about 50 years and the defendant for about 38 years.

See, also, Kain v. Smith, 89 N. Y. 375, and McGovern v. Central Vermont Ry. Co., 123 N. Y. 280, 25 N. E. 373.

The doctrine of the foregoing cases has been recognized and approved even in cases where it was held that the employé was not entitled to recover because for some reason it was not applicable. Marsh v. Chickering, 101 N. Y. 396, 399, 5 N. E. 56; Sweeney v. Berlin & Jones Envelope Co., 101 N. Y. 520, 524–525, 5 N. E. 358, 54 Am. Rep. 722; Caciatore v. Transit Const. Co., 147 App. Div. 676, 132 N. Y. Supp. 572 (2d Dept.). In the case last cited the trial judge charged the following request:

"In determining the question of plaintiff's contributory negligence and also the question of plaintiff's assumption of the risks, that the plaintiff was entitled to rely upon the assurance of safety given by defendant, if one was given, and was also entitled to rely upon the superior knowledge and experience of defendant in such work."

This was held error upon the ground, it would appear, that it was an instruction to the jury that they must find the plaintiff free from contributory negligence if they believed that an assurance of safety had been given; whereas, that was merely a fact to be taken into consideration in considering the questions of contributory negligence and assumption of risk. The court expressly recognized the doctrine of Kain v. Smith, supra, McGovern v. Central Vermont R. Co., supra, and Chadwick v. Brewsher, supra, and quoted with apparent approval the language of Mr. Justice Holmes, while a justice of the Supreme Court of Massachusetts, in McKee v. Tourtellotte, 167 Mass. 70, 44 N. E. 1072, 48 L. R. A. 542, as follows:

"When we say that a man appreciates a danger, we mean that he forms a judgment as to the future, and that his judgment is right. But if against this judgment is set the judgment of a superior, one, too, who from the nature of the callings of the two men, and of the superior's duty, seems likely to make the more accurate forecast, and if to this is added a command to go on with his work and to run the risk, it becomes a complex question on the particular circumstances whether the inferior is not justified as a prudent man in surrendering his own opinion and obeying the command. The nature and the degree of the danger, the extent of the plaintiff's appreciation of it, and the exigency of the work, all enter into consideration, and no universal rule can be laid down."

[10] Applying these principles to the case at bar, we find that plaintiff's intestate was directed to work in the trench, and was assured that it was unnecessary to shore it up, apparently on the ground that the work would take only a short time. Although the decedent was a man of experience, he could not, as a common laborer, be expected to know fully the danger of the trench caving in (Doyle v. Baird, supra), and the defendant, if he did not have superior knowledge, at least assumed to have it (Chadwick v. Brewsher, supra).

[11] The defendant was present, saw the trench, and directed decedent to work there without its being shored up, told decedent, in answer to the latter's request that it be shored up, that this was unnecessary as there were only a couple of lengths of pipe to be put in. Was decedent obliged to set his judgment against the judgment of his employer and throw up his job, or as an alternative assume the risk of injury from his employer's negligence? I think not. I think that he was entitled to rely upon his employer's presumably superior knowledge, and hence that he was not chargeable with assumption of risk or contributory negligence as matter of law.

[12] The Court of Appeals, in the recent cases of Fitzwater v. Warren, 206 N. Y. 355, 99 N. E. 1042, and Welch v. Waterbury Co., 100 N. E. 426, has repudiated the doctrine of assumption of obvious risks in cases where the master has neglected the performance of a statutory duty. These cases are not, of course, directly applicable to the case at bar, for here the duty claimed to have been neglected was not a statutory duty. But they indicate a salutary tendency on the part of the Court of Appeals—to which the lower courts should and well may give heed—to confine the doctrine of assumption of obvious risks within as narrow limits as is possible without resorting to judicial legislation. If public policy requires that the employé shall not be permitted to waive the performance of a statutory duty on the part of the master by continuing to work with knowledge that it has not been performed, it likewise requires that he shall not be deemed to have waived the performance of a common-law duty because he has some knowledge of the danger, if he has received the assurance of his employer that the place where he is directed to work is safe or that further precautions are unnecessary, unless it clearly appears that his knowledge and appreciation of the danger is fully equal to that which the master has or ought to have if he performs his duty.

For these reasons I now think that the complaint should not have been dismissed. There was sufficient evidence to go to the jury on the question of the defendant's negligence, and I think the plaintiff was entitled to have the questions of contributory negligence and assumption of risk also submitted to the jury.

The motion for a new trial is therefore granted; but, as it is for an error of law, no costs are imposed.